Filed May 26, 1885.

---

No. 11,405.

### FIELD ET AL. *v.* MALONE ET AL.

PRACTICE.—*Notice by Publication.—Affidavit.—Case Criticised and Distinguished.* —The statute does not contemplate a full statement of the cause of action in an affidavit for publication, and an affidavit which states that there is a cause of action in the plaintiffs against the defendants, that it is connected with a contract, and that the defendants are non-residents, is not so defective as to render the notice by publication void. *Fontaine* v. *Houston*, 58 Ind. 316, criticised and distinguished.

PLEADING.—*Matters in Abatement and in Bar.*—At common law and under the present code matters in abatement must be pleaded prior to pleading matters in bar.

ATTACHMENT.—*Garnishee.—Affidavit in Garnishment.—Verification.*—Where the garnishee receives notice, and there is a conflict of evidence as to whether the affidavit in garnishment was verified, the Supreme Court will not disturb the finding of the trial court upon that question.

SAME.—*Rights under General Denial.—Burden of Proof.*—A general denial filed by a garnishee in attachment proceedings.imposes upon the plaintiff the burden of showing that all of the persons to whom the garnishee is indebted are before the court.

SAME.—*Effect of Judgment.*—A judgment against the garnishee will protect him against the claims of his creditors in case the court has jurisdiction of the persons of the creditors and jurisdiction of the subject-matter of the action.

SAME.—*Parties.—Partnership.*—A debtor of the firm of Marshall Field & Co. can not be garnished upon a claim due from him to the firm of Field, Leiter & Co., but if all the members of the firm to whom the garnishee is indebted are before the court, the mistake in giving the name of the firm will not prevent the plaintiff from obtaining judgment against the garnishee.

From the Porter Circuit Court.

*A. D. Bartholomew, E. D. Crumpacker* and *N. W. Bliss,* for appellants.

*W. Johnston* and *W. Pagin,* for appellees.

ELLIOTT, J.—James R. Malone, one of the appellees, filed a complaint against a great number of defendants, among whom are Levi Z. Leiter and the appellants Marshall Field, Lorenzo G. Woodhouse, Henry Field, Henry J. Willing and Joseph N. Field, who are described as composing the firm of Field, Leiter & Co. It is alleged that Malone was sheriff of Porter county from November, 1879, to November, 1880; that, on the 23d day of January of the year 1880, John V. Farwell, Charles B. Farwell, William D. Farwell, Simeon Farwell and John K. Harmon, composing a copartnership in the firm name of J. V. Farwell & Co., commenced an action in the Porter Circuit Court upon a note against Joan M., John H. and Edwin M. Trevor, and supplemented such action with proceedings in attachment against the defendants therein; and at their suit a summons and writ of attachment were issued against the Trevors, and delivered to Malone, as sheriff, which summons was duly served by reading, and the writ of attachment by seizing and taking into custody a general stock of goods in store, household goods and live-stock; that this action was pending from the 23d day of January to the 10th day of June, 1880, when it was finally determined; that prior to the final judgment therein, all of the defendants being creditors of the Trevors, filed necessary papers and became parties to the suit and proceeding in attachment of J. V. Farwell & Co.; that upon the final trial of such action, judgments were rendered in favor of the creditors for the amount of their respective claims against the Trevors, but the finding and judgment of the court were against the attaching creditors upon the issues involved in attachment proceedings, and the attached property was ordered released from the levy; that afterward fifteen separate executions were issued upon the order of the creditors on

such judgments against the goods and chattels of the Trevors, by virtue of which Malone levied upon and took into custody the property theretofore held under the writ of attachment, and held the same until the expiration of his term of office, on the 3d day of November, 1880, when he turned the executions and property, held by virtue of the same, over to his successor; that afterward suits were brought to enforce mortgages against the property so levied upon, and the mortgage claims were adjudged prior liens to the executions, and the property was recovered by the mortgage creditors; that during the time Malone had custody of said property under the attachment and executions, he was required to, and did pay out and expend $250 for storage, $248.55 for the care of and for boxing and removing said property; that his fees for serving summons in that case are $16.40, for serving subpœnas $6.70, for serving notices $6.50, and for care of horse $12, all of which were due and unpaid. It is further alleged that since Malone's claim accrued, Levi Z. Leiter ceased to be a member of the firm of Field, Leiter & Co., and said copartnership is now known as the firm of Marshall Field & Co., but is composed of the same members as the old firm, except Leiter, and the new firm has assumed and agreed to pay the liabilities of the old firm. At the time the complaint was filed Malone also filed an affidavit and undertaking in attachment. On the 24th day of February, 1882, an affidavit was filed charging that the appellant Bartholomew was indebted to Marshall Field, Levi Z. Leiter, Lorenzo G. Woodhouse, Henry J. Willing, Henry Field and Joseph N. Field, and upon this affidavit a writ was issued against the garnishee and duly served on him. On the 4th day of February, 1882, the following affidavit, upon which publication was asked, was filed, to wit: "James R. Malone says, on oath, that he is plaintiff in the above entitled cause, and that he has a good and meritorious cause of action against said defendants; that they are all indebted to him on account and for services performed by him as sheriff of Porter county,

Indiana, for them in their suit against Joan M., John H. and Edwin Trevor, in the Porter Circuit Court; that the said defendants are all non-residents of the State of Indiana, and are necessary parties to this action." Bartholomew, who was summoned as garnishee, appeared specially and moved to quash the notice to the non-resident defendants, on the ground of the insufficiency of the affidavit, and he also moved to quash the summons and dismiss the proceedings in garnishment. After these motions were overruled, Bartholomew appeared and answered. The first paragraph of his answer is the general denial; the second alleged that at the time he was served with summons he was indebted to the firm of Marshall Field & Co.; that the firm was composed of Marshall Field, Lorenzo G. Woodhouse, John G. McWilliams, Joseph Field and Harlow N. Higginbotham, and no other persons, and that he owed no other indebtedness to the defendants or either of them; that the claims sued upon by the plaintiff are against the firm of Field, Leiter & Co., composed of Marshall Field, Levi Z. Leiter, Lorenzo G. Woodhouse, Henry J. Willing and Joseph N. Field, and that Levi Z. Leiter is not a member of the firm of Marshall Field & Co., to which the defendant is indebted, and McWilliams and Higginbotham are members of the latter firm and were not members of the firm of Field, Leiter & Co. The trial resulted in favor of the plaintiff, and appellants unsuccessfully moved for a new trial.

The affidavit upon which the notice of publication was ordered was not so defective as to render the notice ineffective. It states that there is a cause of action in the plaintiff against the defendants, shows that it is connected with a contract, and alleges that the defendants are non-residents of the State of Indiana. These are the essential facts which authorize notice by publication, and as they are embodied in the affidavit they gave the court jurisdiction to order the publication of the notice. The statute does not contemplate a full statement of the facts constituting the cause of action in the

affidavit for publication, nor is there any reason for requiring such a statement. The affidavit is not intended to inform the defendant of the particular character of the cause of action urged against him, but its purpose is to exhibit to the court such facts as show that the case is one in which it is proper to give notice by publication. No useful purpose would be subserved by setting forth the facts at length; on the contrary, such a procedure would cumber the record and do no good at all. In *Trew* v. *Gaskill*, 10 Ind. 265, it was held that it was not necessary for the affidavit to recite a cause of action, and this we regard as sound doctrine. It is true that in *Fontaine* v. *Houston*, 58 Ind. 316, it is said that "*Trew* v. *Gaskill*, 10 Ind. 265, is overruled as to this point;" but it is difficult, if not impossible, to ascertain the point of conflict between the two cases. In *Fontaine* v. *Houston*, *supra*, the affidavit contained no statement of any jurisdictional fact at all, except that the defendants were non-residents; there was, indeed, no attempt to state any others, and the only question before the court was whether such an affidavit was sufficient. There was no such question in *Trew* v. *Gaskill*, *supra*, and it is not easy to perceive any reason for the declaration that it is overruled even upon one point; but, however this may be, it is clear that the decision in *Trew* v. *Gaskill*, *supra*, has not been overruled in so far as it decides the principle applicable to this case. The just and practical rule is that laid down in *Dronillard* v. *Whistler*, 29 Ind. 552, where it was said: "There was an affidavit filed with the complaint, showing the nature of the demand; that the claim was just; the sum the plaintiff believed he ought to recover, and that the defendant was a non-resident of the State. This is all the code requires to authorize notice by publication." There is no just reason for requiring that the affidavit shall do more than state in general terms all the facts essential to give jurisdiction to order publication, for no issue is joined upon it, no information to the defendant is imparted by it, nor does he act upon the affidavit. It is necessary, as held in *Fontaine* v. *Houston*, *supra*,

to state all the facts essential to the authority to give notice by publication, but it is not necessary to state these facts with any great degree of particularity.   To adopt any other rule would result in confusion, create useless complications, and subserve no good purpose.   If it be held that the cause of action must be set forth, then it would follow that if defectively set forth the proceeding would fail, and this would be a result attended with evil.   If it be held that the cause of action must be pleaded, then some plan for testing the sufficiency of the affidavit must be devised by the courts, for none is provided by the statute, and this certainly is a result not contemplated by the Legislature.   Looking to analogous cases we shall find that it has been steadily held that it is not necessary for the affidavit to state facts particularly, but that general statements, substantially in the language of the statute, are all that is required ; this is so in attachment and in replevin, and there is no good reason why it should not be so in such cases as this.   We hold that the affidavit before us was sufficient to support the order for publication.   *Quarl* v. *Abbett, ante,* p. 233.

Evidence was offered in support of the allegation that the affidavit in garnishment was not verified, and this was met by opposing evidence that it was duly subscribed and sworn to.   There was, therefore, an issue of fact and evidence fully supporting the finding of the court upon that issue, and the general rule is that in such cases the finding of the trial court will not be disturbed.   *Lexington, etc., R. R. Co.* v. *Ford Plate Glass Co.,* 84 Ind. 516, see page 517.   This general rule should apply to a case like this where the affidavit has accomplished its purpose and has given the garnishee notice and secured him a trial:

The appellee insists that the plea in abatement, having been filed with the general denial, and forming the second paragraph of the same answer, can not be considered.   The foundation of this position is that matters in abatement can not be pleaded with matters in bar, and this unquestionably was the

rule under the common law, and is the rule under the present code. The statute is imperative in its terms, reading thus: "An answer in abatement must precede, and can not be pleaded with an answer in bar." R. S. 1881, section 365. We need not decide whether the remedy adopted to get rid of the plea was appropriate or not, for a right result was reached, and it has long been the rule of this court that a judgment will not be reversed if a correct result was reached although the remedy pursued was not the appropriate one. This rule is, indeed, little more than the corollary of the often repeated rule that a judgment will not be reversed for a harmless error. This we say for the reason that, if Bartholomew had no right to file such a plea, no harm was done him in not permitting him to make it available.

The creditors of Bartholomew were all before the court, except Higginbotham and McWilliams; had they been in court we should not have the slightest hesitation in approving the decision of the trial court, for the fact that Leiter was not a member of the firm to which Bartholomew was indebted did not deprive the plaintiff of his rights. If in making him a party the plaintiff did do an unnecessary thing, it did Bartholomew no injury.

It is true that McWilliams became a member of the firm of Marshall Field & Co. after Bartholomew became its debtor, but this does not change the case, for the question is, was he one of his creditors at the time the process in garnishment was served?

The first question we encounter on this branch of the case is, did the general denial entitle Bartholomew to take advantage of the fact that two of his creditors were not before the court? We think that it did put the appellee to proof that Bartholomew was the debtor of the parties against whom the attachment proceedings were directed. The only ground upon which the appellee had a right to proceed against Bartholomew was that he was the debtor of those against whom the

attachment issued, and this fact the general denial required the plaintiff to prove. The case is not like that of defendants to the main action, for here the right to proceed against the garnishee depends entirely upon the fact that he is the debtor of the attachment defendant. The garnishee has a right to be protected and this confers the subordinate right to have the plaintiff make proof that the proceeding is against the party to whom he is indebted. It is the right of the garnishee to compel the plaintiff to prove all material facts essential to make the payment of the judgment in the garnishment a protection in case his creditors should sue him. Waples Attachment and Garnishment, 374; Drake Attachment, section 659.

The question which next confronts us is whether Bartholomew was indebted to the parties named in the complaint and affidavit of garnishment. That he was indebted to Marshall Field & Co. is conceded, but it is insisted that he was not indebted to the firm of Field, Leiter & Co., and that he can not be made liable upon a claim against the latter firm. The contention is that the firm of Marshall Field & Co. is a legal entity entirely distinct from the firm of Field, Leiter & Co., and that a debtor of the one firm can not be garnished upon a claim against the other. We should not be inclined to yield to this argument if the members of the two firms were the same, for if all the parties interested were before the court the garnishee would be fully protected, and that is all he need ask. It is not for him to make questions upon the regularity of the proceedings; it is enough for him if the court has jurisdiction of the subject-matter, and all of his creditors are before it. All that he requires is such a judgment as will protect him in case he is sued by his creditors, and if the court has jurisdiction of the subject-matter and of the persons of the defendants, its judgment will afford him protection. But the case before us is one in which the plaintiff proved the debt due him to be owing by the firm of Field, Leiter & Co., while the debt due from the garnishee was to Marshall Field &

Co., and all of the members of that firm were not before the court, so that the rights of the garnishee could be fully protected. We do not think the judgment ought to stand. What the judgment should be if all the parties were before the court, is not the question; the question is, what are the rights of the garnishee when his creditors are not all in court?

We have not passed unnoticed the proposition of appellee that Higginbotham was a dormant partner, and, therefore, not a necessary party, but we find no evidence of this fact. The plaintiff and the witness Deckover testify that they did not know that Higginbotham was a partner, but this does not prove that he was a silent member of the firm. The only inference that can fairly be deduced from the evidence is that McWilliams and Higginbotham were both members of the firm to which Bartholomew was indebted.

We have given the argument of appellee upon the proposition that partners are jointly and severally liable full consideration, but we can not think that it meets the questions which the record actually presents. The debtor of the appellee was the firm of Field, Leiter & Co., while the creditor of the garnishee was the firm of Marshall Field & Co., and in order that the garnishee might be fully protected it was necessary to have all members of the latter firm before the court. It was not enough to have in court all the members of the firm of Field, Leiter & Co., but it was also necessary to have in court all the persons who were members of the firm of Marshall Field & Co. at the time the summons was served on the garnishee.

We must reverse the case for the error pointed out, and it is not necessary to notice the other questions argued, as the reversal opens the whole cause as to all the appellants.

Judgment reversed.

Filed June 10, 1885.