Watts, Trustee, *et al. v.* Sweeney *et al.*

Filed Jan. 31, 1891.

———————◆———————

No 14,553.

Watts, Trustee, et al. *v.* Sweeney et al.

Mechanic's Lien.—*Provision for Enforcement.*—A mechanic who repairs a chattel has a lien upon it, which he may enforce under sections 5304 and 5305, R. S. 1881. The former section does not declare a lien, but provides the manner of enforcing the common law lien given to a mechanic making repairs on a chattel.

Same.—*Statute Liberally Construed.*—The statute providing for the enforcing of the lien upon the article repaired must be liberally construed.

Same.—*Mechanic Furnishing Materials.*—A mechanic who furnishes the materials with which to alter or repair a chattel intrusted to him for that

purpose has a lien thereon, as much so as if the owner of such chattel furnished such materials.

SAME.—*Priority of Mechanic's and Chattel Mortgage Liens.*—If a mortgagor, by the terms of the mortgage, retains for a long time the possession of the chattel mortgaged, and retains it long after the debt secured is due, for the purpose of earning money with which to pay off the mortgage debt, the presumption is that such chattel is to be kept in repair; that it would be intrusted to a mechanic to make the necessary repairs, and such mechanic has a lien for such repairs that is superior to the lien of the mortgagee.

SAME.—*Mortgagor Agent of Mortgagee.*—If a mortgagee, even by the terms of the mortgage, permits the mortgagor to retain the property mortgaged for a long period of time, when it is property, as a railroad locomotive, liable to need repairing, the court will presume that he constituted the mortgagor his agent to employ a proper person to make such repairs when necessary, and the lien thus created will be held superior to the mortgagee lien.

SAME.—*Sale to Enforce a Mechanic's Lien.*—A sale under sections 5304 and 5305, R. S. 1881, when their terms have been complied with, passes to the purchaser a complete title to the property purchased.

SAME.—*Quieting Title to Personalty.*—A defendant, who has a title to a chattel which is superior to the lien of a chattel mortgage thereon, may file a cross-complaint in a foreclosure proceeding to quiet his title thereto; and if the plaintiff dismiss such proceeding the defendant may proceed on his cross-complaint to quiet his title to such chattel.

PLEADING.—*Plea in Abatement.—Order of Filing.*—A plea in abatement, filed after a plea in bar, will be stricken out on motion, even though the plea in bar was withdrawn, by leave of court, for the purpose of filing such plea in abatement, before the latter was filed.

SAME.—*Dismissal of Complaint.*—A dismissal of the action by the plaintiff after a cross-complaint filed by the defendant does not operate as a dismissal of the cross-complaint.

From the Harrison Circuit Court.

*W. N. Tracewell* and *R. J. Tracewell*, for appellants.

*M. Z. Stannard*, for appellees.

OLDS, C. J.—On September 12th, 1883, the Louisville, New Albany and Corydon Railway Company, for the purpose of securing the payment of its negotiable bonds and interest coupons thereto attached, executed to appellant a mortgage upon its real estate, its road and its equipments, including an engine called the " Samuel J. Wright," which mort-

gage was, on said day, recorded in the office of the recorder of Harrison county, Indiana, in Record No. 12.

On August 4th, 1887, appellant filed in the Harrison Circuit Court his complaint for the foreclosure of the mortgage, making defendants to said action, among others, the appellees Sweeney and Sweeney.

Appellees Sweeney and Sweeney filed an answer to the complaint, and also filed a cross-complaint.

Appellant then dismissed his complaint as to Sweeney and Sweeney.

Issues were joined between appellees and appellant Watts, trustee, upon the cross-complaint, and a trial was had and judgment rendered upon the cross-complaint in favor of the appellees.

The following errors are assigned :

1st. That the court erred in overruling the separate demurrer of the appellant to the first paragraph of the cross-complaint of the appellees.

2d. The court erred in sustaining the demurrer of the appellees to the plea in abatement filed by appellant to the cross-complaint of the appellees.

3d. The court erred in sustaining the demurrer of the appellees to the second paragraph of the separate answer of the appellant to the cross-complaint of appellees.

4th. The court erred in overruling the separate motion of appellant to separately docket and try the cross-complaint of appellees.

5th. The court erred in overruling the motion by appellant for a new trial on appellees' cross-complaint.

6th. The cross-complaint of appellees does not contain sufficient facts to constitute a cause of action against appellant.

It is alleged in the cross-complaint " that, on the 15th day of May, 1885, and for three years prior thereto, and ever since said date, the appellees Sweeney and Sweeney were, and had been, engaged under the firm name of M. A. Sweeney

& Brother, in running and operating a foundry and machine shop at the city of Jeffersonville, county of Clark, and State of Indiana, for the purpose of building and repairing engines, locomotives, and other machinery for railroad companies, steamboat companies and the general public; that they admit the execution of the mortgage to the plaintiff in trust, as in his complaint herein set forth and declared, and that the same was for the uses and purposes therein mentioned. It is further admitted that the conditions of said mortgage were broken by non-payment of interest upon the bonds referred to and secured thereby and at the time therein set out, and that then and there, and by reason thereof, the plaintiff became entitled to the possession of all the personal property covered by said mortgage, including the said engine and tender number one(1),and named the "Samuel J. Wright," but the defendants aver that notwithstanding the premises, the plaintiff permitted their co-defendant, the Louisville, New Albany and Corydon Railway Company, the mortgagor thereof, to continue to hold, use and operate the railroad, machinery and rolling stock named in said mortgage (including said engine and tender), for a long time after the same became forfeited as aforesaid, to wit, for more than two years thereafter; that during all of said time, by the consent of the plaintiff, and to enable said mortgagor to pay the principal and interest of the debt secured by said mortgage, their said co-defendant was allowed to remain so in possession and control of and operate the said railroad, and to run the said locomotive engine and tender; that by reason of such use of said engine and tender in the manner and for the purposes aforesaid, the same became worn out, broken, out of repair, and of no service to the plaintiff or said mortgagor, for the purpose aforesaid, and in order to render said engine and tender fit for use, the same being then and there the only locomotive engine and tender owned by the plaintiff or said mortgagor, and to be used in operating said mortgaged railroad, and thereby to earn the means of liquidating said debt

and interest, repairs became necessary thereto; that said Louisville, New Albany and Corydon Railway Company, while so possessing and operating said railroad, locomotive engine and tender, intrusted the said engine and tender to the appellees as machinists and mechanics at their said place of business, at the said city of Jeffersonville, to the end that the same might be by the said firm, as such mechanics, over-hauled, repaired, altered, remodelled and rendered fit for use; that while said engine and tender were so intrusted to them and under their care and control, and in their custody for the purposes aforesaid, they, as such firm, at the special instance and request of said mortgagor, expended and bestowed a large amount of money, to wit, eleven hundred and sixty-three dollars and fifty-six cents in providing material and labor in and about the necessary repairs, refitting and rendering fit for service the said engine and tender, thereby imparting increased value thereto in said sum; that the repairs so made by these cross-complainants were necessary to be done, and the amount so expended was a reasonable charge for such repairs."

It is further averred " that long before the commencement of this suit the said repairs upon said engine and tender were completed, and their said reasonable charge for the same became then and there due, yet the same was not paid, and said engine and tender taken away, nor were said charges paid or tendered to said cross-complainants, or any one for them; that the said charges for said repairs became due and payable to these cross-complainants on the 15th day of July, 1885; that after six months had elapsed from said last named date, to wit, on the 27th day of March, 1886, these cross-complainants, for the purpose of paying and satisfying their said charges, the same not having previously been paid, sold the said locomotive engine and tender at public auction on Pearl street, between Court avenue and Maple street, in the city of Jeffersonville, Clark county, State of Indiana, for cash, at the hour of ten o'clock A. M., on the 27th day of March,

1886, the same not being susceptible of division without injury thereto ; that said articles exceeded in value the sum of ten dollars, and before making said sale said cross-complainants, as such mechanics, gave public notice of the time, place and terms thereof by advertisement for three weeks successively next before said sale, in the National Democrat, a weekly newspaper of general circulation, printed and published in said county of Clark, the same being the county in which said articles were so repaired and sold ; that said cross-complainants, being the highest and best bidders therefor, became the purchasers of the said engine and tender, and have ever since said time owned, held and possessed the same in pursuance of said sale and purchase ; that said plaintiff and the cross-complainants' co-defendant each claim to own some interest in said property by virtue of a mortgage filed with plaintiff's complaint and sought to be foreclosed in this action, a copy of which is filed herewith, made a part hereof, and marked ' Exhibit A ; ' but these cross-complainants allege that neither said plaintiff nor their co-defendant has any interest whatever therein nor title thereto, and that their said claim and pretence cast a cloud upon the title of these cross-complainants to said property, and materially interfere with their use and enjoyment thereof, and prevent them from selling and disposing of the same. Wherefore these cross-complainants pray that the said cloud be removed from their title to said property, and their title quieted therein ; that plaintiff may be enjoined from foreclosing its said mortgage herein upon said engine and tender, and for such other and necessary relief in the premises as the nature and circumstances of this case may require."

The first question presented upon the facts alleged in the cross-complaint is as to the priority of the lien of the appellees over that of the mortgagee. The appellees had a lien upon the property for the materials furnished and labor performed in making the repairs ; this they would have had at common law, but the same lien which they had at common

law is declared, and a method for its enforcement provided, by sections 5304–5, R. S. 1881.

This section is very awkwardly worded. It provides that " Whenever any person shall intrust to any mechanic or tradesman materials to construct, alter, or repair any article of value," etc. It is a remedial statute, and must be construed liberally, and a reasonable construction of it is that it was intended to apply to cases where articles of value are intrusted to a mechanic or tradesman to alter or repair, and, indeed, literally construed, it would apply to the case under consideration, for the engine and tender were intrusted to the appellees to alter and repair, and when so altered and repaired the engine and tender so intrusted to them were a part of the material which entered into and constituted a part of the same as repaired. This section does not declare a lien, but provides the manner of enforcing a lien which the mechanic has at common law, and it would be an imputation upon the intelligence of the legislative body enacting the section to hold that it was only intended to apply to a case where materials were furnished to alter or repair an article of value, and that it does not apply where the mechanic is intrusted with the article to be altered or repaired, furnishing his own materials for the repairs, in view of the fact that there is no other statute relating to such a case. The rights of the appellees are therefore governed by sections 5304–5, *supra,* in enforcing their lien.

The case presented by the cross-complaint shows the engine repaired was mortgaged with the other equipments of the railroad ; that it was the only engine belonging to the mortgagor and used in operating the railroad, and by the terms of the mortgage was left in the possession of the mortgagor, and after the debt became due it was still permitted by the mortgagee to remain in the possession of the mortgagor, to be used by him in operating the railroad and earning the money to pay the mortgage debt, and that by virtue of such use it became worn, out of repair, and unfit for use,

and was by the mortgagor in possession, long after the debt matured, and after there was a forfeiture of the conditions in the mortgage, intrusted to the appellees to repair. Under such circumstances the necessary implication was, and the fair presumption is, that the engine thus mortgaged, but retained by the mortgagor, to be used by him in earning money to pay the mortgage debt, was to be kept in repair ; and the further presumption follows that it being machinery requiring skilled mechanics and machinists to repair, it would be intrusted to machinists to make necessary repairs, and such being the understanding of the parties to the mortgage, as fairly inferred from the nature of the machinery and use to be made of it, and by permitting it to be retained and used by the mortgagor long after the mortgage debt matured and the conditions of the mortgage forfeited, the mortgagee was bound to know that such mechanic or machinist would have a lien for the amount of the repairs.

When the mortgagee intrusts machinery of the character in controversy to the custody of the mortgagor for a long period of time, to be used by the mortgagor in operating the railroad, it will be presumed against the mortgagee that all necessary repairs were contemplated, and the mortgagor was, in case of needed repairs, constituted the agent of the mortgagee in procuring such repairs, and in such case equity gives the mechanic a lien for his services and materials. The repairs add to the value of the property, and they are for the benefit of the mortgagee as well as the mortgagor.

Where property is to be retained and used by the mortgagor for a long period of time, it will be presumed to have been the intention of the parties to the mortgage, where it is property liable to such repairs, that it is to be kept in repair, and when the property is machinery, or property of a character which renders it necessary to intrust it to a mechanic or machinist to make such repairs, the mortgagor in possession will be constituted the agent of the mortgagee to procure the repairs to be made, and as such necessary repairs

are for the betterment of the property, and add to its value to the gain of the mortgagee, the common law lien in favor of the mechanic for the value of the repairs is paramount and superior to the lien of the mortgagee. The mortgagee is presumed in such case to have contracted with a knowledge of the law giving to a mechanic a lien.

Where the lien is purely a statutory one, or where the property is of such a character that it would not be reasonable to anticipate the necessity for any needed repairs for the period of time the property is to or does remain in the possession of the mortgagor, or when it is but reasonable to expect the mortgagor in person to care for or repair the property, in such cases a different rule may prevail.

In the case of *Hanch* v. *Ripley, post*, p. 151, it was held that the lien of an agister for feeding horses was not superior to a chattel mortgage, but the agister is given a lien by statute, and it would be the natural presumption that if the mortgagor retained the possession of horses or live stock, he was to feed and care for the same.

In Jones Chattel Mortgages (2d ed.), section 473, it is said: " Where the subject of a mortgage was a hack let for hire, and it was described as ' now in use' at certain stables, and it was stipulated that the mortgagor might retain possession and use it, it was regarded as the manifest intention of the parties that the hack should continue to be driven for hire, and should be kept in a proper state of repair for that purpose, not merely for the benefit of the mortgagee, but for that of the mortgagor also, by preserving the value of the security and affording a means of earning wherewithal to pay off the mortgage debt," and this is the holding in the case of *Hammond* v. *Danielson*, 126 Mass. 294.

It is the recognized rule that when the mortgagee of a ship allows the mortgagor to continue in possession as the apparent owner, making it a source of profit wherewithal to pay off the mortgage debt, the mortgagor has the implied right to do all that is necessary to keep the ship in repair,

and it is inferred that he has the right to procure such repairs to be made on the usual and ordinary terms, and such terms give the shipwright a lien for the work done and the labor expended. Jones Chattel Mortgages, section 535 ; *The De Smet,* 10· Fed. Rep. 483, and note on p. 489 ; *Scott* v. *Delahunt,* 65 N. Y. 128. See, on question of liens, *Jackson* v. *Cummins,* 5 M. & W. 341.

In 1 Jones Liens, section 744, the doctrine is stated to be that the mortgagor's authority for the creation of a lien on the mortgaged property may be implied from the mortgagor being allowed to remain in possession of the chattel, and the lien of the mechanic is prior to the lien of the mortgagee.

The averments of the complaint show that section 5305 was fully complied with in making the sale. Notice was published in accordance with the requirements of said section, and a sale made in accordance with the sections; a sale under sections 5304 and 5305 passes a complete title to the property to the purchaser. There was no error in overruling the demurrer to the complaint.

The next question presented is as to the ruling of the court on the demurrer to the appellant's plea in abatement. This plea shows that prior to the commencement of this action appellant had filed his complaint in the Circuit Court of the United States for the district of Indiana against the appellees in replevin, alleging that the appellant had a special property in the engine and tender, by reason of the mortgage, and was entitled to the possession of the same by reason of the failure to comply with the conditions of the mortgage, and the appellees had alleged in their answer in said cause the same service performed on the engine and tender, the sale, and that they were the owners, alleging in said answer the same facts set up in their cross-complaint in this action, and that said cause was pending at the time of the commencement of this action and the filing of the cross-complaint and is still pending; also, alleging other formal

matters showing that the United States court had jurisdiction in said action of replevin.    The appellant first appeared to the cross-complaint and filed an answer in bar, and then with leave of court withdrew the answer in bar and filed an answer in abatement.

That when a party first files an answer in bar he can not afterwards file an answer in abatement, even by leave of court, has been settled by a decision of this court in the case of *Brink* v. *Reid,* 122 Ind. 257, and having been so held and the statute, section 365, R. S. 1881, providing that answers in abatement must precede and can not be pleaded with an answer in bar, we deem it best to adhere to the decision in that case.    Pleas in abatement being dilatory pleas, a strict rule should be held in regard to them. The answer in abatement in this case having been filed after the filing of an answer in bar the same was subject to be struck out on motion.    The same result was reached by sustaining a demurrer thereto, and there is no available error in the ruling.

The next alleged error discussed is the ruling of the court in sustaining appellees' demurrer to the second paragraph of appellant's answer.

This paragraph disclaims any intention on the part of appellant to affect in any way the appellees by the foreclosure of the mortgage, and states facts showing that the engine and tender were personal property in the hands of the appellees.

It is contended that this paragraph of answer is good, for the reason that the appellees, having the possession, can not maintain a suit to determine and quiet their title.    However this may be as to maintaining an independent suit, in this case the appellant in his complaint sought a foreclosure of his mortgage upon the engine, and the appellees were made parties to the suit, and filed their cross-complaint, asking to have their ownership declared, and to enjoin and prevent a

foreclosure against them as to the engine and tender. After the filing of the cross-complaint appellant dismissed his case as to the appellees. This did not take appellees' cross-complaint out, and the appellees had the right to have their title to the property settled and determined as between them and the mortgagee.

The facts alleged in the cross-complaint entitled the appellees to some relief, and the answer did not state facts showing they were not entitled to any. No objection is made as to the form of the judgment.

The next objection urged relates to the ruling of the court on the motion to separately docket and try the case on the cross-complaint, but it is conceded that this was a matter within the discretion of the trial court, and not a matter to which the appellant was entitled as of right. There was no error in this ruling.

The next question presented arises on the ruling of the court in overruling the motion for a new trial. It is contended that the evidence as to the notice and sale of the engine and tender were improperly admitted, for the reason that such sale was unauthorized. This objection is not well taken. The statute authorized the sale.

Lastly, it is urged that the evidence does not support the finding. There is sufficient evidence to support the finding, and in such a case it will not be disturbed by this court.

There is no error in the record.

Judgment affirmed, with costs.

Filed Jan. 31, 1891.