RICHARD ROE *v.* JANE DOE.

[No. 172A2. Filed November 27, 1972.]

*Robert G. Mann,* of Indianapolis, for appellant.

*Frank P. Huse, Jr.,* of Indianapolis, for appellee.

CASE SUMMARY

BUCHANAN, P.J. — Defendant-appellant, RICHARD ROE (the father) appeals from a decision in a paternity action determining him to be the father of L——, a child born out of wedlock to plaintiff-appellee, JANE DOE (the mother). We affirm.

FACTS—The facts and evidence most favorable to appellee and the judgment below are: On May 23, 1968, appellee, using the form provided by the Juvenile Court of Marion County, filed the following Petition To Establish Paternity of Child (Paternity Petition herein):

IN THE JUVENILE COURT
OF MARION COUNTY

[JANE DOE]
[Street Address]            PETITION TO ESTABLISH
       vs.                  PATERNITY OF CHILD
[RICHARD ROE]      AND PROVIDE FOR ITS SUPPORT
[Street Address]

[JANE DOE], being duly sworn, upon her oath says:
b. 6-2-44

1. She is 23 years of age, and files this action.

2. She is the mother of [L——] a child born out-of-wedlock on 26th day of February 1962 at General Hospital in the County of Marion, State of Indiana.

3. Said child was conceived out-of-wedlock in June 1961, in the County of Marion, State of Indiana.

4. At the time of conception of said child, petitioner was unmarried.

5. [RICHARD ROE] is the father of said child.

6. She is liable for the necessary expenses of the pregnancy and birth of said child in the amount of $104.50.

7. She has expended funds for the support and care of said child and is liable to furnish continuing support and care for said child.

8. She has not retained private counsel to prosecute this action.

9. She was born in Marion County, State of Indiana.

10. Defendant [RICHARD ROE] was born in unknown County State of Tennessee.

11. Altho said child is over 2 years of age, defendant has voluntarily supported.

WHEREFORE, Your petitioner prays that:

1. [RICHARD ROE] be ordered to appear before said court, and

2. The Court finds him the defendant [RICHARD ROE] to be the father of said child, and

3. The Court enter judgment against the defendant that he is the father of said child, and for the necessary expenses of pregnancy and birth, reasonable attorney's fees, and court costs, and

4. The Court make a continuing order against the defendant for adequate provision for the support of the child, and

5. For all further and proper relief in the premises.

(Signed)     [JANE DOE]

PETITIONER

Appellant was summoned to appear in Juvenile Court on or before June 7, 1968, and on June 5, 1968, his counsel entered a Special Appearance for the purpose of "contesting the jurisdiction of this court over the parties and subject matter by way of Plea in Abatement." No Plea in Abatement or Demurrer was thereafter ever filed contesting such jurisdiction.

Thirty-eight days after the paternity action was filed, appellant filed Motions for Change of Venue and for Trial by Jury. Both of these Motions were subsequently denied.

Two years and seven months later, on January 28, 1971, appellant filed a Motion to Dismiss attacking the sufficiency of the Paternity Petition, which was also denied.

In July of 1971, this cause was submitted for trial before the court.

The only evidence presented at trial was the testimony by appellee and appellant. Appellee testified to having sexual

relations with appellant in June of 1961 and that approximately nine months later, on February 26, 1962, L—— was born. She denied having sexual relations with anyone prior to June of 1961. Appellant, she said, admitted being the father of L—— and he paid her support money for L—— from the time the child was born until this paternity action was commenced.

Four other children were born out of wedlock to appellee subsequent to the birth of L——. There was other evidence reflecting on the good moral character of appellee.

Appellee testified that her medical expenses in connection with the birth of L—— were $104.50 and there was no evidence presented as to the nature and extent of the legal services rendered by appellee's counsel, although her counsel appeared of record and participated in the proceedings.

Appellant admitted to sexual relations with appellee only on one occasion in May or June of 1960. Furthermore, he denied ever admitting that he was the father of L—— or that he furnished support payments for L——.

Judgment was entered establishing appellant to be the father of L—— and ordering him to pay $15.00 per week support for L——, $104.50 medical expenses incurred by appellee during her pregnancy and the birth of L——, and $400.00 for appellee's attorney's fees.

## ISSUES

ISSUE ONE.    Were appellant's Motions for Change of Venue and Trial by Jury, filed thirty-eight (38) days after appellee filed her Paternity Petition, timely filed so as to require granting them as a matter of right?

ISSUE TWO.    Was appellee's Paternity Petition so vague and poorly drafted that the court should have granted appellant's Motion to Dismiss?

ISSUE THREE. Was there sufficient evidence to support the trial court's decision that appellant is the father of L——?

ISSUE FOUR. Was it an abuse of discretion to require appellant to pay appellee's medical expenses and attorney's fees?

As to ISSUE ONE, appellant contends that by virtue of his Special Appearance, the issues were not closed by operation of law until such time as the court ruled on the jurisdictional question, which it did not do, and therefore his Motions for Change of Venue and Trial by Jury were timely and should have been granted. Appellee's response is that the Motions were not filed within 30 days after appellee filed her Paternity Petition, as provided by Supreme Court Rules 1-12B(2) and (3), prior to January 1, 1970.

As to ISSUE TWO, appellant asserts that his Motion to Dismiss should have been granted because appellee's Paternity Petition was so vague and poorly drafted that it failed to inform him of what issues would be presented for trial, a charge which appellee denies.

As to ISSUE THREE, appellant argues that the evidence presented by appellee failed to prove by a preponderance of the evidence that he was the father of L——; that appellee was guilty of gross misconduct and came into court with unclean hands, that as her character is in dispute insufficiency of the evidence is a question of law. Appellant is merely asking this court to reweigh the evidence, says appellee.

As to ISSUE FOUR, appellant contends that there was insufficient evidence to support an award of medical expenses and no evidence as to attorney's fees. Appellee says such matters are solely within the discretion of the trial court, pursuant to Ind. Ann. Stat. § 3-641 (Burns 1968), IC 1971, 31-4-1-19, which provides that the court shall make an order making adequate provision for the support of the child and may also provide for the payment by the father of the medical

expenses incurred by the mother in the care of the pregnancy and prosecution of the paternity action including court costs and reasonable attorney's fees.

## DECISION

ISSUE ONE—It is our opinion that appellant's Motions for Change of Venue and Trial by Jury were *not* timely filed and were therefore properly overruled.

Appellant seeks to give vitality to three Motions. Two of these, a Motion for Change of Venue and a Motion for Trial by Jury were filed thirty-eight (38) days after the filing of the Paternity Petition on May 23, 1968. The third Motion attacking the sufficiency of the Paternity Petition was filed on January 28, 1971, after the case had languished for over two and one-half years without attention from the court or the parties.

Because his Special Appearance contesting the jurisdiction of the court over the parties and the subject matter remained on file with that issue unresolved, the issues were not closed by operation of law and the Motions for Change of Venue from the County and for Jury Trial should therefore have been granted, says appellant.

He admits, however, that in paternity actions the issues are closed by operation of law and that the Supreme Court rules of practice and procedure in effect prior to January 1, 1970, provided:

Rule 1-12B(2) and (3).

"(2)  \* \* \* Any such application for a change of judge or change of venue from the county shall be filed not later than ten (10) days after the issues are closed on the merits.

"(3)  Provided, however, *in those cases where no pleading or answer may be required to be filed by the defending party to close the issues (or no responsive pleading is required under a statute) each party shall have thirty (30) days* after the filing of such case within which to request a change from the judge or county." (Emphasis supplied)

(*Note:* Supreme Court Rule 1-8A imposed the same time limitation on motions for jury trial by reference back to

1-12B. Thus the same 30 day requirement applied to both types of motions and will be treated accordingly.)

By recognizing that in paternity actions the issues are deemed closed by operation of law, both parties to this appeal, wittingly or unwittingly, are placing reliance on *State ex rel. Beaven* v. *Marion Juvenile Court* (1962), 243 Ind. 209, 184 N.E.2d 20, which established the principle that formality of pleadings in the formation of issues in paternity cases is not necessary nor is responsive pleading required. After stating that the issues are closed as a matter of law when a Paternity Petition is filed, unless a timely objection is made by the defendant as soon as he learns of the setting of the case for trial, the court went on to observe that:

> "* * * if the parties *by their action* with respect to the case, *adopt the proposition that the cause will be tried upon the issues asserted in the petition* of the relator, *without the formality of pleadings* as required in civil cases generally, the parties by such action (by their own conduct) adopt the position that insofar as the closing of issues is necessary to an expeditious disposition of the case, *the issues will be considered closed 'by operation of law.'*" (Emphasis supplied.)

Observing that the paternity statute is silent as to the formation of issues, *Beaven* sets out this significant guideline:

> "It is apparent from the tenor of the law that it is intended that the proceedings be conducted *expeditiously* in order that the infant, which is the subject of the action, may be supported * * *." (Emphasis supplied.)

Appellant denies the need for haste and the application of Supreme Court Rule 1-12B(3) because his Special Appearance contesting the jurisdiction of the court over the parties and the subject matter was on file and undetermined and the proceedings were therefore suspended until the jurisdiction question was resolved.

One of the fallacies of this "suspense" argument is that

appellant never filed a Demurrer or Plea in Abatement addressed to this question. Under the applicable rules, "[l]ack of jurisdiction of the person [had to] be raised by demurrer or plea in abatement or it [was] waived." *Flanagan's Indiana Pleading and Procedure*, p. 39. Ind. Ann. Stat. § 2-1011 (Burns 1967); *Eel River R. Co. v. State* (1900), 155 Ind. 433, 57 N.E. 388; *Keiser v. Yandes* (1873), 45 Ind. 174.

The principle that dilatory pleas must have been promptly filed was incorporated into numerous cases decided prior to January 1, 1970: *Collins v. Nichols* (1856), 7 Ind. 447; *Jones v. Cincinnati Type Foundry Co.* (1860), 14 Ind. 89; *Field v. Malone* (1885), 102 Ind. 251, 1 N.E. 507; *Glidden v. Henry* (1885), 104 Ind. 278, 1 N.E. 369, 54 Am. Rep. 316; *Brink v. Reid* (1890), 122 Ind. 257, 23 N.E. 770; *Watts v. Sweeney* (1891), 127 Ind. 116, 26 N.E. 680, 22 Am. St. 615; *Black v. Thompson* (1894), 136 Ind. 611, 36 N.E. 643; *Moore v. Harmon* (1895), 142 Ind. 555, 41 N.E. 599; *Carmien v. Cornell* (1897), 148 Ind. 83, 47 N.E. 216; *Chicago & S.E. R. Co. v. Grantham* (1905), 165 Ind. 279, 75 N.E. 265; *Boland v. Claudel* (1914), 181 Ind. 295, 104 N.E. 577; *Kilty v. Michael* (1921), 190 Ind. 374, 130 N.E. 531; *Estey v. Barnes* (1896), 14 Ind. App. 446, 42 N.E. 1118; *Sanders v. Hartge* (1897), 17 Ind. App. 243, 46 N.E. 604. Indicative of the requirement that dilatory pleas must have been filed at the earliest opportunity is *Collins v. Nichols, supra,* where the court said:

"A party should avail himself of matter in abatement at the earliest opportunity."

By indefinitely resting on his oars after filing a Special Appearance, the jurisdiction question was effectively waived. By not filing the three Motions in question until *after* the expiration of the thirty-day period, appellant by his conduct adopted the position that the cause would be tried "upon the issues asserted in the petition . . . without . . . formality of pleadings . . ." and that "the issues will be considered

closed 'by operation of law.' " *Beaven* v. *Marion Juvenile Court, supra.*

An unperfected Special Appearance is too slender a reed to resist the double weight of waiver and the need to expeditiously decide paternity cases.

ISSUE TWO—It is our opinion that appellee's Petition to Establish Paternity was adequate.

While appellant's Motion to Dismiss is subject to the same infirmities as the other Motions discussed under ISSUE ONE, we nevertheless tarry long enough to consider the sufficiency of the Paternity Petition because of its common use as a form in such cases.

All that is required of a Paternity Petition is that it contain a brief statement of the facts to establish the paternity of the child and a request that the defendant be required to fulfill the obligations of a father. Ind. Ann. Stat. § 3-633 (Burns 1968), IC 1971, 31-4-1-11; *Jackson* v. *Geiger* (1949), 227 Ind. 265, 85 N.E.2d 636; *Caine* v. *Keller* (1958), 128 Ind. App. 511, 149 N.E.2d 845.

As a result, a general form of a petition is permissible. *Jackson* v. *Geiger, supra; Caine* v. *Keller, supra.*

An examination of appellee's Paternity Petition reveals that it alleges that she bore a child out of wedlock, that appellant is the father of the child, that he had voluntarily supported the child, and a request that appellant be declared the father of the child and that he be compelled to support the child. These allegations were sufficient.

ISSUE THREE—It is our opinion that the trial court's decision that appellant is the father of L—— was supported by sufficient evidence.

On appeal, appellant is faced with overcoming the standard appellate rules that this court must view the evidence in a light most favorable to the appellee and the judgment of the court below. We may not weigh conflicting evidence or determine the credibility of wit-

nesses and the weight to be given their testimony. *Robinson v. Priest* (1970), 146 Ind. App. 442, 256 N.E.2d 582; *Clark v. Harness* (1968), 143 Ind. App. 47, 238 N.E.2d 31; *Byerly v. Edington* (1959), 129 Ind. App. 583, 159 N.E.2d 305. The decision of a trial court may be reversed on appeal for insufficiency of the evidence if, and only if, there is no substantial evidence of probative value to support that decision. *Houser v. Board of Commissioners of the County of DeKalb* (1969), 252 Ind. 301, 312, 247 N.E.2d 670, 675; *Winkler v. Winkler* (1969), 252 Ind. 136, 246 N.E.2d 375.

While in a paternity action the burden is on the mother to prove that the defendant is the father of the child, the testimony of the mother regarding an act of sexual intercourse with the defendant, coupled with the *probability* of pregnancy is sufficient to support a determination that the defendant is the father of the child. *Beaman v. Hedrick* (1970), 146 Ind. App. 404, 255 N.E.2d 828; *Goldman v. State ex rel. Thomas* (1935), 101 Ind. App. 147, 198 N.E. 450. The mere *possibility* of a pregnancy, however, is not sufficient to establish paternity. Judge Sullivan in *Beaman v. Hedrick, supra,* put it this way:

> "An act of intercourse coupled with the *probability* of conception at that time will support a determination of paternity. An act of intercourse plus the *possibility* of conception, however, as a matter of law, cannot serve to support such determination." (Original emphasis.)

Appellee testified that she had intercourse with appellant in June of 1961, that prior to that date she did not have intercourse with anybody else, and that L—— was born on February 26, 1962.

Appellee's testimony that L—— was conceived in June of 1961 by appellant means at least a period of gestation of eight months and perhaps as long as nine months—and is safely within the range of normal gestation. This presents a sufficient *probability* of pregnancy, within the meaning of

*Beaman* v. *Hedrick, supra,* to establish that appellant was the father of L——.

Appellant's reference to *Beaman* v. *Hedrick, supra,* in support of his contention that the evidence was insufficient to establish his fatherhood of L—— is of no avail because in *Beaman* v. *Hedrick, supra,* the period from the date of alleged intercourse to the date of birth was less than seven months (212 days). Expert medical testimony indicated only a *possibility* of paternity under such circumstances.

We can only conclude that a gestation period ranging from eight to nine months is within the permissible range of *probability.* Despite appellant's vigorous questioning of appellee's character, the trial court had the right to determine the weight of the evidence and appellee's credibility as he sought the truth of paternity.

In our opinion his decision establishing the fatherhood of appellant was founded on a legally recognized probability.

Justice Cardozo once referred to the logic of probabilities this way:[1]

". . . Law like other branches of social science, must be satisfied to test the validity of its conclusions by the logic of probabilities rather than the logic of certainty."

ISSUE FOUR—It is our opinion that the awards for the support of L——, for medical expenses incurred by appellee during the birth of L——, and for attorney's fees were a proper exercise of the trial court's discretion.

Ind. Ann. Stat. § 3-641 (Burns 1968) provides that, in an action to establish paternity, once the trial court has determined the paternity of the child "* * * the court shall * * * make an order which shall make adequate provision for the support of the child, * * * and may also provide for the payment by the father of said child of the necessary expenses

1. The Growth of the Law (New Haven: Yale University Press, 1924), p. 33.

incurred by, or on behalf of, the mother, in the course of the pregnancy, birth of the child, and prosecution of an action to establish paternity of said child, including court costs and reasonable attorneys' fees *under such terms and conditions as the court may prescribe, * * *.*" (Emphasis supplied.)

At the trial, sufficient testimony was admitted as to appellee's inability to support L—— to justify an order requiring appellant to pay $15.00 per week support. Appellee further testified that she incurred medical expenses in the amount of $104.50 during her pregnancy and as the result of L——'s birth. On the basis of this evidence and the statutory discretion vested in the trial court by Ind. Ann. Stat. § 3-641, *supra,* we are unable to say that the trial court abused its discretion in making awards for support and medical expenses. See *Barkley* v. *Stovall* (1947), 117 Ind. App. 162, 70 N.E.2d 430; *Libertowski* v. *Hojara* (1967), 141 Ind. App. 439, 228 N.E.2d 422.

Nor can we find fault with the amount of attorney's fees ($400.00) awarded by the trial court. Again, this court will not annul such a decree in the absence of an abuse of discretion by the trial court. *In re Meyer* v. *Meyer* (1965), 138 Ind. App. 649, 215 N.E.2d 556; *Pelkey* v. *Strom* (1963), 135 Ind. App. 163, 187 N.E.2d 753.

This general rule finds support in § 3-641, *supra,* which authorizes the trial court to require the father to pay certain expenses "* * * including * * * reasonable attorneys' fees under such terms and conditions as the court may prescribe, * * *."

Awarding of attorney's fees in divorce actions is analogous to paternity proceedings. The following language by Judge Sullivan in *Hardiman* v. *Hardiman* (1972), 152 Ind. App. 675, 284 N.E.2d 820, summarizes the applicable law in awarding fees for legal services in divorce actions:

"While most members of the bench and bar consider it standard practice to hear testimony concerning the value of

legal services in divorce actions, such testimony is not always essential to an award of fees. It is within the prerogative of the trial judge in certain instances to utilize his own experience and judicial knowledge as to the reasonable value of services."

No error is assigned here that the trial court refused evidence as to the value of legal services rendered, only that there was no evidence to support such an award.

Relying on *Hardiman* v. *Hardiman, supra* (and the cases therein cited), and the intent expressed in § 3-641, *supra,* we conclude there need not necessarily be such evidence. It is not an abuse of discretion in a paternity action for the trial court to award attorney's fees absent evidence on the subject, provided only that such award is reasonable under the circumstances of the particular case.

We perceive no basis for holding the $400.00 award for attorney's fees unwarranted or excessive in amount.

The judgment of the trial court is therefore affirmed.

Sullivan and White, JJ., concur.

NOTE BY THE COURT: In an attempt to protect the child in this case from the harmful consequences which may result from unnecessary notoriety that his status of legitimacy is being questioned, we direct that the clerk of this court withhold from public examination the record (transcript), briefs, and other papers in this case. Copies of this opinion should be mailed to court and counsel in the usual manner but all copies made available to the press and public should bear fictitious names for the parties, such as Richard Roe, defendant-appellant, v. Jane Doe, plaintiff-appellee, and should carry no number. The official reporter of the court, all unofficial reporters, all news media representatives, counsel, and the parties are requested to cooperate in preserving the anonymity of the child by not using the true names of the parties in any report of this case, written or oral.

NOTE.—Reported at 289 N.E.2d 528.