D.E.F. *v.* E.M.

[No. 1-976A152. Filed June 8, 1977.]

*Dean E. Richards, Richards, Bennett and Bravard,* of Indianapolis, for appellant.

*Richard Willis,* Deputy Prosecuting Attorney, of Richmond, for appellee.

ROBERTSON, C.J.—Defendant-appellant, D.E.F. appeals from a decision in a paternity action determining him to be the father of D.J.F. and M.V.F., minor children born out of wedlock to plaintiff-appellee, E.M.

We affirm.

The facts in the record most favorable to appellee and the judgment are as follows: While he had a wife and four sons in another state, D.E.F. moved in with E.M. in late November, 1969. He continued to live with her, though they changed residences twice, until June, 1972. D.E.F. admitted that during that time they had sexual relations "[o]nce a week, something like that. Every two weeks". E. M. denied that she had intercourse with anyone else during the entire time that she lived with D.E.F.

E.M. had been taking birth control pills for several years, but discontinued their use at D.E.F.'s request because he expressed his desire for a little girl. About three weeks later E.M. became pregnant. After a gestation period of about 7 months, the child was born on September 18, 1970. D.E.F. testified that the girl was named after him.

While still living with D.E.F. and while again taking birth control pills, E.M. learned she was pregnant in September, 1971. On May 2, 1972, E.M. gave birth to a full term baby, M.V.F. E.M. and D.E.F. named the boy after D.E.F.'s boss.

Jessie Sheets and his wife lived with E.M. and D.E.F. several years. Jessie accompanied them when D.E.F. drove

E.M. to the hospital for D.J.F.'s delivery. Sheets testified that "[h]e went around, you know, telling everybody, you know, that he was the Daddy of a little girl. . . . He was bragging about he had a baby girl." Sheets also accompanied them to the hospital when M.V.F. was born. He testified that D.E.F. was happy when he learned that he was the father of a boy. Sheets, who worked with D.E.F., also testified that D.E.F. showed photographs of these two children to customers and said they were his.

E.M. began to receive Aid for Dependent Children monies in 1968 or 1969 for the care of her two other children, whose ages were eleven and nine at that time. After M.V.F. was born and D.E.F. left, she received increased aid for the support of the two younger children. D.E.F. had supported D.J.F.'s needs until he left in June, 1972.

On March 8, 1974, E.M. initiated this action by filing a verified petition for determination of paternity and support. Trial commenced in November, 1975. D.E.F. appeals from the trial court's judgment finding him to be the father of D.J.F. and M.V.F., finding that he furnished support within two years of the bringing of the action, and assessing support.

D.E.F. first contends that the action for determination of the paternity of D.J.F. was not brought within the period of time required by IC 1971, 31-4-1-26 (Burns Code Ed.). At the conclusion of E.M.'s evidence, D.E.F. filed a motion to dismiss[1] claiming failure to state a claim upon which relief could be granted, that the action was barred by the statute of limitations, and that E.M. had failed to prove avoidance of the limitation.

---

1. Having filed no answer, D.E.F. did not raise the statute of limitations as an affirmative defense previously; however in a paternity case a responsive pleading is not required. *Roe* v. *Doe* (1972), 154 Ind. App. 203, 289 N.E.2d 528; *State ex rel. Beaven* v. *Marion Juvenile Court* (1962), 243 Ind. 209, 184 N.E.2d 20. When "the adverse party is not required to serve a responsive pleading, he may assert at trial any defense in law or fact to that claim for relief." Ind. Rules of Procedure, Trial Rule 12. D.E.F. properly raised the statute of limitations defense at this time.

Under IC 1971, 31-4-1-26 (Burns Code Ed.), a proceeding to enforce the obligation of the father of a child born out of wedlock must be brought within two years from the birth of the child, with certain exceptions:

"Proceedings to enforce the obligation of the father shall not be brought after the lapse of more than two [2] years from the birth of the child, unless paternity has been established by a judgment of a court of competent jurisdiction, or has been acknowledged by the father in writing *or unless support has been furnished by the alleged father, or by some person on his behalf, either voluntarily or pursuant to an agreement with the mother or some person on her behalf or on behalf of the child. If the paternity has been so established, or if support has been so furnished, the action may be brought at any time within two [2] years after the acknowledgement or the last furnishing of support of the child.* Not more than two [2] years' accrued support furnished prior to the bringing of the action may be recovered from the father or his representatives. * * *" (Our emphasis).

This action was commenced in March, 1974, more than two years after D.V.F. was born. It is a general rule of law that the party pleading the statute of limitations has the burden of proving the action was commenced beyond the statutory time allowed after the cause of action accrued. However, when a party relies on facts in avoidance of the statute of limitations, he assumes the burden of proving such facts. *Sullivan* v. *O'Sullivan* (1959), 130 Ind. App. 142, 162 N.E.2d 315. D.E.F. contends that E.M. did not present sufficient evidence to sustain her burden to prove by a preponderance of the evidence that he had furnished support. *Sullivan, supra.*

The record indicates that in answer to the question "after [the daughter] was born, how did you support that child?" E.M. testified:

"A. Well for two years he did it. I mean I got. I didn't get nothing for [her] and what she had to have he bought.

Q. When you say you didn't get nothing what do you mean?

A. I got ADC for my two older kids.

Q. That's your two older children?

A. Yeah. And [she] wasn't on it because I was living with [D.E.F.] and he supported her.

Q. Okay. How did you, how do you provide for [the son]?

A. Well right after, I don't know what month it was or anything but right after he left and everything they put [both children] on ADC."

D.E.F. answered the question "Did you support . . . the two younger children?" by testifying:

"A. I wouldn't exactly say that I supported them because like I say, I used the little money I made for drinking and such. For good times.
. . .

Q. You're saying, did you provide any support for the two other children in any way?

A. Well, what little money was left might have went in the house which wasn't very much by the time I get down with it.
. . ."

On cross-examination he further testified:

"Q. [D.S.F.] during that period of time when you and [E.M.] were sharing living facilities, did you ever provide any kind of support for that household?

A. I have put some money in yeah. But like I told my attorney, I never put that much because I drank a lot and that's where most of my money went to.
. . .

Q. After [the daughter] was born, did you ever purchase any clothing for the little girl?

A. No I don't remember exactly if we, actually whose money bought it. There's been clothes bought for her yes.

Q. Did you ever buy her any toys at Christmas time or for birthdays or anything?

A. Well yeah. I helped buy all the kids Christmas presents. Her's [sic] and them too.

Q. You indicated that you really didn't pay any of the bills around the house. Is that correct?

A. Not that much no Sir.

Q. But you have indicated that you did contribute somewhat to the household?

A. Well yes. I give her money to buy things with. She'd want money to go shopping or something like this.

Q. So when you gave her money to go shopping, do you know what she was using that money for?

A. No sir I do not."

The trial court could have reasonably inferred that support had been furnished by the alleged father until June, 1972, since which time less than two years elapsed before the commencement of this action. There is substantial evidence of probative value to support the trial court's finding that E.M. sustained her burden of proving that D.E.F. provided support for D.J.F. and that the statute of limitations was thus avoided.

D.E.F.'s only other assignment of error is that the evidence was insufficient to support a finding that he was the father of either child. D.E.F. concedes that this Court will not weigh conflicting evidence nor resolve questions of credibility of the witnesses, and that we must examine all the evidence in a light most favorable to the appellee E.M. *O.Q.* v. *L.R.* (1975), 164 Ind. App. 227, 328 N.E.2d 233.

D.E.F. correctly relies on the standard of proof for establishing paternity as stated in *Roe* v. *Doe* (1972), 154 Ind. App. 203, 213, 289 N.E.2d 528, 535:

"While in a paternity action the burden is on the mother to prove that the defendant is the father of the child, the testimony of the mother regarding an act of sexual intercourse with the defendant, coupled with the *probability* of pregnancy is sufficient to support a determination that the defendant is the father of the child. Beaman v. Hedrick, (1970), [146] Ind. App. [404], 255 N.E.2d 828; Goldman v. State ex rel. Thomas, (1935), 101 Ind. App. 147, 198 N.E. 450. The mere *possibility* of a pregnancy, however, is not sufficient to establish paternity. Judge Sullivan in Beaman v. Hedrick, *supra,* put it this way:

'An act of intercourse coupled with the *probability* of conception at that time will support a determination of paternity. An act of intercourse plus the *possibility* of conception, however, as a matter of law, cannot serve to support such determination.' (Original emphasis.)"

This standard requires first that the gestation period of the baby be determined, whether the proof establishes the regular nine-month period or an actual shorter period. The evidence in the case at bar indicates that D.J.F. was born premature after only a 7-month gestation period. If the act of intercourse with D.E.F. can be placed 7 months before the baby's birth, the evidence would be sufficient to establish a *probability* that D.E.F. was the father. Both E.M.'s and D.E.F.'s concurring evidence that they had intercourse regularly near the estimated date of conception—about 7 months prior to the girl's birth, in February, 1970, coupled with her testimony that she did not have sexual relations with any other person during that period of time, is sufficient to sustain a finding of paternity of both children, even without considering the testimony of other witnesses which clearly supports the same decision. *O.Q.* v. *L.R., supra.*

The judgment of the trial court is therefore affirmed.

Lowdermilk, J., concurs; Garrard, J. (participating by designation), concurs.

NOTE.—Reported at 363 N.E.2d 1030.