J. A. Broom & Son *v.* S. S. Dale & Sons.

[67 South. 659.]

1. Bailment. *Laborers liens. Priority. Sales. Conditioonal sales. Rights of seller.*

Under Code 1906, section 3075, which is merely declaratory of the common law, and which provides not only that a mechanic may retain, in his possession, any article which he repairs until the price of his labor and material furnished shall be paid, but also provides for the enforcement of the lien, where a mechanic repaired an automobile, the repairs being ordered by the person in possession who was apparently authorized to contract for same. Such mechanic has a lien for his labor which takes precedence over the rights of the vendor of the machine who sold it, reserving title to secure payment, but transferred the possession to the party ordering the repairs.

2. Sales. *Conditional sales. Rights of sellers.*

Where the sellers of an automobile took purchase money notes in which title to the machine was reserved, but the possession of the machine was delivered to the buyer, they occupy a position like that of chattel mortgagees, and in such case where the possession is to remain with the buyer and the machine to be used by him, which use would probably necessitate repairs upon the machine to keep it in running order and prevent deterioration, there is an implied authority given the buyer to make such repairs.

APPEAL from the circuit court of Jefferson Davis county.

HON. A. E. WEATHERSBY, Judge.

Petition by J. A. Broom & Son against F. R. Polk, in which S. S. Dale & Sons intervene. From a judgment for interveners, petitioners appeal.

The facts are fully stated in the opinion of the court.

*J. C. Oakes,* for appellants.

I fail to find any Mississippi case directly in point with the one at bar, but, from analogous cases, which are plentiful, the principle seems well established in this state that where the workman, by his skill and labor, has enhanced the value of personal property, to the benefit of all, his lien has priority over all others. *Strauss* v. *Bailey,* 58 Miss. 131; *Duncan* v. *Jayne,* 23 So. 392; *Cox* v. *Martin,* 21 So. 611.

If we are to construe the statute giving a mechanic's lien upon personal property for the cost of repairs strictly, as we should, the lien being statutory, then the mechanic, by express words of the statute, is given a lien for repairs superior to every other claim against the property whatsoever the nature of such claim, even against the owner, and he is expressly given the right to retain the property as against the world until his just charges are paid. And as in the case at bar, where the value of the automobile was enhanced by the skill and labor of the mechanic, to the benefit of S. S. Dale & Sons as well as Polk, thereby giving Dale better security for his debt than he had before the repairs were made, the principle is founded in reason and justice. Section 3075, Code of 1906.

In *Brown* v. *Peterson,* 25 App. Cas. (D. C.) 356, 4 Am. & Eng. Ann. Cases, 980, a case strikingly similar to this one, Justice MORRIS said: "Now it is elementary law, which needs no elaboration of argument or

citation of authority in support of it, that a person in possession of property under a lien is the owner of it against all the world and even against the actual owner until his claim is paid; and no one, not even the actual owner, has any right to disturb his possession without previous payment of such claim.'' And Judge WHITFIELD discussing this principle in *Corinth Engine & Boiler Works* v. *Miss. Cent. Railroad Company*, 49 So. 261, in illustration of the principle I am contending to be the correct one, said: ''Whenever the subject has been referred to, it has been conceded that the lien in favor of the innkeeper attaches to the goods, even when not owned by the guest.'' Perhaps this may be *dictum*, but is valuable as illustrating the general principle and confirming the direct announcement of the District of Columbia case cited above.

It is fully shown by the agreed statement of facts that S. S. Dale & Sons were ''aware and were fully advised during such time as such repairs were being made and material furnished as aforesaid,'' and never raised any objection, but kept absolutely silent until Broom had expended his labor and material in repairing the automobile to the extent of ninety five dollars and seventy-five cents, with the knowledge and implied consent of Dale; and now Dale seeks to appropriate Broom's material, skill and labor to his own benefit, without paying Broom a cent for it. The agreed statement of fact shows that the appellants knew that Polk had not paid for the automobile in full; but it nowhere intimates that they knew that appellees had retained title in themselves.

The doctrine of Estoppel applies to the appellees in this case with full force. *Ferguson* v. *Bobo*, 54 Miss. 121; *Upham* v. *Gibson*, 53 Miss. 34; *Levy* v. *Gray*, 56 Miss. 318; *Richardson* v. *Tolliver*, 16 So. 213; 16 Cyc. 764, 770 and 791.

*J. E. Parker*, for appellee.

I have been unable to find but one case where the exact question in this case has been before a supreme court. The case of *Baughman Automobile Co.* v. *Emanuel,* decided by the supreme court of Georgia, January 10, 1912, reported in 73 S. W. 511, involved the priority of liens between the retention of title and a lien for material and repairs. In this case it seems that an automobile worth less than three hundred dollars was made practically as good as new by reason of the repairman having expended the sum of three hundred and thirty dollars in making the needed repairs. The court in deciding who held the prior lien said: "The plaintiff's remedy was not by equitable petition, but paying the balance of the purchase price by Harrell to Emanuel, in whom the title to the automobile was, and then proceeding to subject the property to the mechanic's lien as the property of Harrell, the vendee, at whose instance the improvements were made."

While this is the only case found where the question involved has been before a supreme court, analogous cases involving the same principle have followed the same rule and held the conditional vendor to have a prior claim against all parties. The Mississippi court has, by an unbroken line of authorities, laid down the rule that the conditional vendor only loses his rights against third parties by giving his consent, either express or implied, that the property be sold or encumbered by the conditional vendee. *Watts* v. *Ainsworth,* 89 Miss. 40; *Parry Mfg. Co.* v. *Lowenburg,* 88 Miss. 532; *Columbus Buggy Co.* v. *Turley,* 73 Miss. 529; *Corinth Eng. & Boiler Works* v. *MC. RR.,* 49 So. 261.

The case relied upon by appellant, *Brown* v. *Peterson,* 4 A. & E. Ann. Cases, 980, is very much different from this case, and the principle announced therein does not conflict with the authorities above. In that case the two conflicting claims were an execution levied upon

personal property, which prior to the judgment had been delivered to another party as security for unpaid rent and was in the possession of such party when levied upon. It was held in that case that the landlord had a lien on this property for rent, that this lien was strengthened by the delivery of the property as security for this debt, which made such party a qualified owner, and superior to the execution creditor. The landlord had done all that a prudent man could to protect himself, and the law did protect him against the party who claimed to have acquired rights after the rights of this party had attached. In the case now before the court, S. S. Dale & Sons did all that a prudent man could do to avoid loss by retaining title, while the appellants observed no precaution. As stated in the cases of *Corinth Eng. & Boiler Works* v. *Mississippi Central Railroad,* and the Georgia case of *Baughman Auto Co.* v. *Emanuel,* the repairmen had the right to be paid in advance, had a right to exact security, had a right to protect themselves any way they desired, and when they failed to do so, the doctrine of *caveat emptor* applies.

The appellant claims that in as much as the appellee's security was increased in value by the repairs, he should be made to pay. There is nothing in the statement of facts to justify the belief that these repairs were beneficial to the appellee; only the statement is made that the repairs were made. No repairs might have been needed; the repairs might have decreased the value of the machine so far as the admitted facts are concerned. Though the value of the repairs is strongly questioned by the facts admitted, in the fact, that during the time these repairs were being made, this automobile which sold for seven hundred and seventy-five dollars was not worth four hundred and sixty-five dollars, after all repairs had been made.

But all of the cases cited above negative the idea of the benefit to the property being material in this case. There is no estoppel in this case. *Watts* v. *Ainsworth,* 89 Miss. 40. In this case it is expressly stated that there is no estoppel in these cases unless the conditional vendor has consented to the encumbrance, expressly or impliedly.

As is stated in the *Corinth Eng. & Boiler Works case,* the repairman deals at his peril. And as pointed out in the Georgia case, his remedy is to pay the purchase money owing, and then hold the property for both the repair bill and the purchase money, and thereby get the benefit of the great increase in the value of this property by his work and material.

See the very valuable note beginning on page 277 of vol. 134, Am. State Rep., where it is shown that the only exception to the rule that a party cannot be deprived of his property by the act of a third party, is where he expressly or impliedly consents for such party to have the power of disposition of such property.

Reed, J., delivered the opinion of the court.

Appellants filed a petition against F. R. Polk to recover a balance owing on an account for repairs on an automobile in his possession and for materials used in such repairs. Appellants alleged that the work was done and the materials used for repairing and keeping in order the automobile, and they prayed the court to establish a mechanic's lien thereon and order a sale for the satisfaction of the indebtedness.

Appellees interpleaded, and alleged that they had sold the automobile to Mr. Polk; that notes were given to evidence deferred payments on the purchase price, in which notes title in the property was retained in appellees. They prayed that the automobile be sold, and that the balance owing them as shown by the notes

be paid first out of the proceeds of sale and before payment of appellants' claim for repairs.

The case was tried in the circuit court before the judge, jury being waived, upon an agreed statement of facts. The court gave judgment in favor of appellees deciding that their claim upon the automobile based on the title retained in the notes, was superior to that of appellants for labor and material used in making repairs thereon.

We quote the agreed statement of facts as follows:

"(1) That on the 20th day of June, 1911, S. S. Dale & Sons sold the automobile in controversy to F. R. Polk for the agreed price of seven hundred and seventy-five dollars and retained title in themselves to the aforesaid automobile as security for the purchase price thereof; that there is now due and unpaid on account of said purchase price the sum of four hundred and sixty-five dollars, with interest thereon at ten per cent. per annum from the 20th day of June, 1911; that J. A. Broom & Sons have known at all times that. the said automobile had not been fully paid for by F. R. Polk as aforesaid; that said J. A. Broom & Sons do not question or deny the amount that S. S. Dale & Sons say that F. R. Polk is due them on account of this automobile, and the said automobile is of less value than the unpaid part of the purchase price for which title is retained; that S. S. Dale & Sons admit that the amount of ninety-five dollars and twenty-five cents claimed by J. A. Broom & Sons is just and correct against F. R. Polk for material furnished and repairs made to the automobile involved in this litigation; that S. S. Dale & Sons have been aware and were fully advised during such time as such repairs were being made and material furnished as aforesaid were being made and furnished as aforesaid; that S. S. Dale & Sons at no time ever objected to repairs being made, or material furnished for such repairs to the said automobile.

"Whereas, it is agreed by and between the attorneys for both parties that S. S. Dale & Sons retained a title in themselves for security for the purchase money of said automobile, and that they therefore have an equitable lien upon the said automobile for said purchase money to the amount now unpaid, and that the said J. A. Broom & Sons have a mechanic's lien upon the said automobile for the amount due them as aforesaid for repairs made to and material furnished for the said automobile:

"Wherefore the question submitted to the court for decision is as to whose lien takes priority; and both parties pray the court for an appropriate judgment defining their rights in the premises."

In this state, by statute (section 3075 of the Code of 1906) a mechanic is given the right to retain in his possession any article which he repairs until the price of his labor and material furnished in making such repairs shall be paid. The statute states that any article repaired shall be liable for the price of the labor and material employed in repairing the same. Provision is made in the statute for the enforcement of the mechanic's right, including a special order of sale of the property retained in his possession for the payment of the amount due.

A mechanic, at common law, has a lien on all personal property for repairs. "Persons have by common law the right to retain goods on which they have bestowed labor, until the reasonable charges therefor are paid." 2 Kent's Commentaries, 635. "In the absence of specific agreement, if a party has bestowed labor and skill on a chattel bailed to him for such purpose and thereby improved it, he has by general law a lien on it for the reasonable value of his labor or the right to retain it until paid for such skill and labor." *Drummond Carriage Co.* v. *Mills*, 54 Neb. 417, 74 N. W. 966, 40 L. R. A. 761, 69 Am. St. Rep. 719; *Grinnell* v.

*Cook,* 3 Hill (N. Y.) 491, 38 Am. Dec. 663. It was said by Mr. Kent in his Commentaries that ''this right rests on principles of natural equity and commercial necessity.''

The statute (section 3075) does not create a new right or lien for the mechanic's benefit, but only declares the right and lien which he has at common law, and then provides a method for the enforcement thereof.

In this case the automobile was intrusted by the party who had the lawful possession of it to the appellants to be repaired. By virtue of the labor done by appellants and the material used by them in making the repairs, they had the right under the common law, as well as under the statute, to retain possession thereof until they were paid their charges, and by the statute were given the right to subject the article by proper proceedings and through sale to the payment of the amount owing.

Appellees, by retaining title to the notes given to evidence the purchase price, were placed in the position of a person holding a lien or mortgage on the property. Mr. Polk occupied the position of mortgagor in possession. It is the general rule that the employment of the mechanic making the repairs should be by the owner of the property to be affected by the lien, or by his consent, express or implied.

It has been held that the common-law lien of a mechanic for repairs under special circumstances may be superior to prior existing liens on property. 3 R. C. L., section 56, page —; *Drummond Carriage Co.* v. *Mills, supra.* We quote as follows from 3 R. C. L., section 56:

''Thus where property which is liable to need repairs is to be retained and used by a mortgagor for a long period of time, it will be presumed to have been the intention of the parties to the mortgage that it is

to be kept in repair; and when the property is machinery, or is of such a character that it must be instructed to a mechanic or machinist to make such repairs, the mortgagor in possession will be constituted the agent of the mortgagee to procure the repairs to be made; and as such necessary repairs are for the betterment of the property, and increase its value to the gain of the mortgagee, the common-law lien in favor of the bailee for the value of the repairs is paramount and superior to the lien of the mortgagee. The mortgagee is presumed, in such case, to have contracted with a knowledge of the law giving to a mechanic a lien.''

In the case of *Drummond Carriage Co.* v. *Mills, supra,* a physician had executed a chattel mortgage on a buggy used by him in his practice. He had repairs made on the vehicle in the shop of the carriage company. The party holding the mortgage knew that the physician used the buggy, and knew that he had left it in the shop for repairs. The court held that the carriage company making the repairs was entitled to its lien superior to the lien of the chattel mortgage. The court said that in cases where the mortgagor can be said to have express or implied authority from the mortgagee to procure repairs to be made on the mortgaged property that the lien of the mechanic should be superior to the chattel mortgage.

In the case of *Watts* v. *Sweeney,* 127 Ind. 116, 26 N. E. 680, 22 Am. St. Rep. 615, it was held that a mechanic who made repairs on a locomotive and tender had a lien which took precedence of that of the mortgagee where the property was permitted to remain in the possession and use of the mortgagor, and through such use it became necessary to repair it. We quote from the opinion in this case as follows:

''When the mortgagee intrusts machinery of the character in controversy to the custody of the mort-

gagor for a long period of time, to be used by the mort-
gagor in operating the railroad, it will be presumed
against the mortgagee that all necessary repairs were
contemplated, and the mortgagor was, in case of need-
ed repairs, constituted the agent of the mortgagee in
procuring such repairs, and in such case equity gives
the mechanic a lien for his services and materials. The
repairs add to the value of the property, and they
are for the benefit of the mortgagee, as well as the
mortgagor.

"Where property is to be retained and used by the
mortgagor for a long period of time, it will be pre-
sumed to have been the intention of the parties to the
mortgage, where it is property liable to such repairs,
that it is to be kept in repair; and when the property is
machinery, or property of a character which renders it
necessary to intrust it to a mechanic or machinist to
make such repairs, the mortgagor in possession will be
constituted the agent of the mortgagee to procure the re-
pairs to be made; and as such necessary repairs are for
the betterment of the property, and add to its value
to the gain of the mortgagee, the common-law lien in
favor of the mechanic for the value of the repairs is
paramount and superior to the lien of the mortgagee.
The mortgagee is presumed, in such case, to have con-
tracted with a knowledge of the law giving to a mech-
anic a lien."

In the leading case on this subject (*Williams* v. *All-
sup*, 10 C. B. [N. S.] 417) a shipwright was permitted
to detain a vessel for his charges for repairs as against
a mortgagee under a prior mortgage. These repairs
were made by the mortgagor's directions without the
knowledge of the mortgagee. Opinions were delivered
in the case by several judges. We quote as follows
from that delivered by BYLES, J.:

"As it is obvious that every ship will, from time
to time, require repairs, it seems but reasonable, under

circumstances like these, to infer that the mortgagor had authority from the mortgagees to cause such repairs as should become necessary to be done, upon the usual and ordinary terms. Now, what are the usual and ordinary terms? Why, that the person by whom the repairs are ordered should alone be liable personally, but that the shipwright should have a lien upon the ship for the work and labor he has expended on her. Nor are the mortgagees at all prejudicially affected thereby. They have a property augmented in value by the amount of the repairs.''

In the case at bar the automobile was in the possession of Mr. Polk, and being used by him with the knowledge and consent of appellees, which use continued for a long period of time. Appellees not only knew and consented to the general use of the automobile by Mr. Polk, but also had knowledge that, in the course of his use of the property, he was having it repaired. Appellees, with this knowledge, made no objection to the repairs being made.

From the agreed facts in the case we understand that the repairs were such as were necessary to preserve the automobile and keep it in proper condition for its use. Repair means to restore, renovate, or mend an article; to keep it in good or sound condition. Repairs, in the ordinary sense, are made to prevent deterioration in an article, and to keep it up in its value and preserve it for the use intended. It was clearly the intention of the parties that Mr. Polk, the mortgagor, should continue in the ordinary use of the automobile. While being so used it was necessary to keep it in a sufficient state of repair. This would be not only to the benefit of the user, Mr. Polk, but by preserving the value of the property was also for the benefit of appellees as mortgagees.

From the sole possession, control, and use of the automobile by Mr. Polk by agreement with appellees,

from the manner of its use and the necessity of repairing it to preserve it and keep it in running order and prevent its deterioration, and from the making of such repairs with the knowledge of appellees, we conclude that there was an implied authority and permission from appellees, as mortgagees, to Mr. Polk, as mortgagor, to have such repairs made, and that appellants have a paramount and superior lien to that of appellees on the property for the payment of the labor they performed and materials furnished in repairing it.

Reversed, and judgment here in favor of appellants.

*Reversed.*