Marshall, C. J.
This cause was certified to this court by the Court of Appeals of Lorain county on the ground that the decision reached by that court was in conflict with a decision of the Court of Appeals of the eighth appellate district. The cause was heard on appeal in"the: Court of Appeals;At being an action to determine priority between a chattel mortgage properly filed for record, and the common-law lien of an' artisan for labor and materials performed and furnished upon an automobile, the machine having been retained by the artisan in his possession. The Metropolitan Securities Company .was the owner by assignment of a chattel mortgage executed by Martin- Orlow dated May 28, 1921; the mortgage having been given for the purchase price of the machine, which chattel mortgage was filed June 7, 1921, with the recorder of Cuyahoga county, where all the parties resided and where the sale of the automobile was made and chattel mortgage given. By the terms of the mortgage the mortgagor was permitted to retain possession and use of the machine and the mortgagor agreed not to incumber the machine without the written consent of the mortgagee, and further covenanted and agreed *585 “to take the best care of the property and keep it in first-class condition and order at all times at the expense” of mortgagor. Some time thereafter, and while the mortgage was still in full force and effect, the machine became damaged and was left by the mortgagor with J. J. McGuire, a mechanic, for repairs. Repairs were made by him upon the orders of Orlow, but without knowledge or consent of the mortgagee. The machine was delivered to McGuire for repairs September 18, 1921, and remained in his possession up to the time it was sold under order of the Court of Appeals. The Court of Appeals found that there was due to the mortgagee the sum of $451.70, with interest from October 29, 1921, and that the same was a first lien upon the automobile, and the court further found that there was due to J. J. McGuire, upon his common-law lien, the sum of $355.20, with interest from October 1, 1921, and that such lien was inferior to that of the chattel mortgage. The court made no finding as to the value of the automobile at the time the repairs were ordered, nor of the extent to which the value of the car was enhanced by the repairs. By consent of parties the automobile was sold under the foreclosure decree of the Court of Appeals with the understanding that the lien would attach to the fund. Upon sale the machine sold for only $280, and the question for determination is which of the parties is entitled to the fund.
It has been urged that the legal question involved in this case is affected in some measure by Section 33, Article II of the Ohio Constitution, as amended in 1932, which provides:
*586 “Laws may be passed to secure to mechanics, artisans, laborers, subcontractors and materialmen, their just dues by direct lien upon the property, upon which they have bestowed labor or for which they have furnished material. No other provision of the Constitution shall impair or limit this power.”
It is quite certain that this amendment was intended to apply only to liens of mechanics, artisans, other laborers, and materialmen for improvements upon real estate. The language of the amendment is, of course, broad enough to include improvements to personal property. However, if such an application be given that amendment, it is perfectly apparent that it can have no operation upon the issues of the present controversy, because the amendment is not self-executing and by its terms provides only that “laws may be passed.” In the absence of any legislation pursuant to that amendment the situation remains exactly as it was before the amendment. If any force and effect were to be given that amendment, in the absence of legislation pursuant thereto, it would be more reasonable to say that mechanics, artisans, and other laborers could have no lien upon personal property until legislation were enacted. We think therefore it is more reasonable to apply that amendment to proposed liens upon real estate, and to recognize what really is the fact, that it was intended to authorize legislation giving a “direct” lien upon real estate without regard to a contract between the owner of the property and such mechanics, artisans, and other laborers. Such an interpretation of that amendment would leave artisans’ liens upon personal property to continue to exist as heretofore under the common *587 law. There is no division among the members of this court concerning the right of artisans to have a common-law lien, and if such right has not been recognized by this court at any earlier date it is quite evident that it is only because the question has not heretofore been before the court for determination. The right is an ancient one, based upon immemorial custom, and, so far as we have been able to learn, has been recognized by every jurisdiction that has ever had occasion to consider the question.
The Legislature of Ohio has never created a lien in favor of an artisan for labor and materials rendered and furnished upon chattel property, but by the well-settled provisions of the common law, which will be fully recognized by this court, an artisan who performs labor, lends skill, or furnishes material for the building or repair of chattel property has a lien upon the chattel to which he has contributed his labor, skill, or material while he retains such chattel property in his possession. McGuire, by his contribution of labor and material and his continued possession of the machine, acquired a valid and subsisting lien upon it from the date the labor and materials were furnished. The only question for determination is whether that lien attached to the entire automobile or attached only to the interest of Orlow at the time the machine was delivered to McGuire for repairs and was therefore subject to the lien of the recorded chattel mortgage.
It has been decided by this court in Robinson, Jr., v. Fitch, 26 Ohio St., 659, that—
The “interest of a mortgagee under a chattel mortgage is that of a general owner of the property mortgaged; and where there is no reservation of the *588 right to the possession in the mortgagor, the mortgagee is entitled to the possession.”
This is the only pronouncement of this court upon that subject, but that rule has never been departed from by this court and it has been followed in many cases by the lower courts of this state. The same doctrine prevails in the law of real estate mortgages, in an unbroken line of authorities. It is the principle of a real estate mortgage that it operates as a conveyance of the fee subject to a defeasance, and that upon condition broken the conveyance becomes absolute, and thereupon the mortgagee becomes entitled to possession of the real estate free from any claim of the mortgagor. At this point equity intervenes and, in order to do justice between the parties, requires that an action be brought to foreclose the equity of redemption.
By the provisions of Sections 8560 and 8561, General Code, a chattel mortgage may be deposited with the county recorder of the county where the mortgagor resided at the time of the execution of the mortgage, if a resident of this state; and by the provisions of subsequent sections the mortgage shall, by the county recorder, be filed, indexed, and kept for the inspection of all interested persons. The mortgagee by himself or agent must make a sworn statement of the amount due and that it is just and unpaid. Unless the compliance with these statutory provisions constitutes notice to the world of the existence of a lien upon chattel property, then the statutory provisions are worse than a nullity, because their only effect would be to mislead persons who lend money on chattel property upon the faith of such security. If such compliance with the *589 statutory provisions constitutes constructive notice, then that notice is binding upon all persons, including McGuire, the artisan, who has made the repairs upon this machine. It was the finding of the Court of Appeals that the Metropolitan Securities Company had no knowledge of the needed repairs and had not given its consent that such repairs be made, by McGuire or any one else.
It was urged that, the machine having been damaged, repairs would be beneficial, and that consent may be implied. This does not by any means follow. It may be conceived that the machine was in such condition that repairs would not enhance the value thereof to the full amount of the cost of the repairs, or it may be further conceived that the mortgagee would prefer to make the repairs himself and be the judge of the extent thereof. It is quite certain that, although repairs were made by McGuire at a charge of $355.20, the machine itself, after completion of the repairs, sold for only $280. The record does not disclose the true condition of the machine before the repairs were made, but the itemized bill of the artisan shows that less than $40 was expended for new parts.
The small amount of this item leads to the conclusion that the injuries were not extensive and the fundamental usefulness of the machine not destroyed or even seriously impaired. It cannot reasonably be doubted that the machine had a very substantial value before any of the repairs were made, and it was this value which the mortgagee was entitled to have undiminished by being subordinated to a claim of a repair man whose labor and materials might or might not increase the value of the *590 injured machine by the amount of his charges, however reasonable such charges might be.
It has further been urged that the mortgagee gave express consent, and that this claim is borne out by the provision of the mortgage above quoted to the effect that the mortgagor would keep the property in first-class condition at his own expense. We are of the opinion that the correct interpretation of this clause does not j'ustify the assumption that the mortgagor was constituted the agent of the mortgagee. Upon no reasonable theory can it be said that expenses were to be charged against the mortgagee, when it was expressly agreed that they should be paid by the mortgagor. If it should be held that this is not the true interpretation of that clause in the mortgage, but, on the contrary, that the language employed authorized the mortgagor to contract the repairs and make the charge a lien upon the machine prior to that of the mortgage, then by the same reasoning it must also be held that the authority to contract for the repairs would make the mortgagee personally liable for the amount of same. It requires no logic to show the serious danger to which such doctrine would lead. It would be unsafe for any one to be named as the mortgagee of personal property, where there could be any possibility of extensive repairs becoming necessary. Such a doctrine would make it impossible for persons to borrow money upon the security of chattel property. Upon no principle of law, good morals, or common sense can any person create a lien upon property which he does not own, nor beyond the extent of his interest in property which he does own, and the court should not find in favor of any such *591 lien except upon authority either expressly given or necessarily implied from facts and circumstances which will admit of no other conclusion.
In Rankin v. Scott, 12 Wheat. (25 U. S.), 177, 6 L. Ed., 592, the court held:
“The principle is believed to be universal, that a prior lien gives a prior claim, which is entitled to prior satisfaction, out of the subject it binds, unless the lien be intrinsically defective, or be displaced by some act of the party holding it, which shall postpone him, in a court of law or equity, to. a subsequent claimant.”
By the statutes of this state a livery stable keeper has a lien which is given priority over liens of chattel mortgages; but the Legislature has not seen fit to extend such priority to artisans’ common-law liens. Before passage of the livery stable keepers’ statute the lower courts of this state had refused such priority. On the other hand, mechanics’ liens upon real property are by the express provisions of the statute, made to attach only to the interest of the owner at the time the repairs are made. No assistance by analogy is therefore to be obtained from such cases. >■
However, authorities are by no means wanting upon the legal principles involved in this controversy. Counsel for the repair man rely upon two or three cases, which will first receive attention.
The case of Drummond Carriage Co. v. Mills, a Nebraska ease, reported in 54 Neb., 417, 74 N. W., 966, 40 L. R. A., 761, 69 Am. St. Rep., 719, is perhaps the strongest case cited. But a careful examination of the opinion in that case discloses that the court fell into the error of treating the buggy of a *592 physician as analogous to a vessel needing repairs in a foreign port in the course of a voyage. And it is further apparent that the court in that case was influenced by the facts and circumstances to hold that there was implied authority from the mortgagee to have the repairs made.
Another case is that of Hammond v. Danielson, 126 Mass., 294. The property upon which a lien was claimed in that case was a hack which was being let for hire and retained by the mortgagor to afford a means of earning the wherewithal to pay off the mortgage debt, and it is apparent that in that case there was a true analogy to the admiralty law. But the courts of Massachusetts are not committed to the doctrine of giving artisans’ liens priority over chattel mortgages as is shown by an examination of Globe Works v. Wright, 106 Mass., 207, where a contrary doctrine was held.
Another case is that of Broom & Son v. Dale & Sons, 109 Miss., 52, 67 South., 659, L. R. A. 1915D, 1146. That case can have very little force as authority for the repair man, because it is apparent that the mortgagee had full knowledge of the making of the repairs by the party claiming the artisan’s lien. That case is practically destroyed as an authority by the later Mississippi case, Hollis & Ray v. Isbell, 124 Miss., 799, 87 South., 273, 20 A. L. R., 244, in which the case of Broom & Son v. Dale & Sons was distinguished.
The last of the cases relied upon by the repair man which we will notice is Watts v. Sweeney, 127 Ind., 116, 26 N. E., 680, 22 Am. St. Rep., 615. The property in that case was an engine being used by a railroad company. This ease is therefore some *593 what similar in principle to the Massachusetts case, Hammond v. Danielson, supra, and both of those casies come within a different principle and aré placed in a class different from one in which liens claimed upon pleasure automobiles are involved. Without any exception, maritime liens are recognized as having priority over chattel mortgages, upon grounds of public policy, and because of the certain benefit that accrues to a mortgagee of a vessel from the making of repairs, and the immediate necessity for so doing to permit the vessel to continue on its journey, a benefit which results not only to the owner of the vessel but to the mortgagee as well. Some analogy may be drawn between maritime liens and liens upon personal property devoted to and being employed in public service, but no possible analogy can be drawn between maritime liens and liens upon a pleasure automobile. A vessel requiring repairs at a foreign port before it could proceed upon its journey would not only be a total loss if it did not proceed, but the cargo would also be lost or damaged by the delay. There is every reason why a vessel should be promptly repaired and proceed upon its voyage, while, on the other hand, a pleasure automobile not only earns nothing but offers greater security to the mortgagee by remaining idle.
While, as before stated, a few cases can be found which apparently support the repair man’s contentions, we think they can properly be distinguished, not only as having been based upon an improper and an unwarranted analogy to maritime liens, but also, in some instances, upon the peculiar facts and circumstances of the case. On the other hand, a *594 large number of authorities supports the claims of the priority of the chattel mortgage. Without attempting to enter into a discussion of all such eases, it is sufficient to say that it has been so decided by the courts of the following states: Michigan, Illinois, Tennessee, West Virginia, New Hampshire, Georgia, Missouri, Alabama, South Carolina, Texas, Washington, Oklahoma and South Dakota.
The underlying principles of all those cases is that the lien which is prior in time is prior in right, and that the record of the mortgage is notice to the whole world, including the repair man. It is apparent that a mortgagee without notice of the intended repairs has no opportunity to protect himself, and that he cannot be the judge of whether repairs are needed, or to what extent such repairs would enhance the value of the property, or whether the contract for repairs is a reasonable one; while, on the other hand, the repair man has every opportunity to fully protect himself before either expending labor or using materials in repairs. There is no obligation on his part to do anything, or to incur a penny of expense, until he has assurance that the property is free from incumbrance. If the person in possession of the machine, who requests that repairs be made, cannot give such assurance, the artisan is not bound to proceed.
It being conceded in this case that the mortgage was properly filed, and that by proper diligence McGuire could have learned all about it, and it being found that the mortgagee did not know of or consent to the repairs made by McGuire, and it being further found by the Court of Appeals that the claims and liens of both parties are valid, no equi *595 tics are presented to affect the application of the legal principles involved. We therefore hold that McGuire had constructive notice of the existence and the validity of the mortgage, that his lien attached only to the interest of the mortgagor in the machine, and that the lien of the artisan is therefore inferior to that of the filed mortgage. The property having already been sold, it is the judgment of this court that the fund remaining after payment of the expenses of the sale and the costs, in the lower courts be awarded to the Metropolitan Securities Company, and that the costs of this error proceeding be adjudged against the defendant in error J. J. McGuire.

Judgment for plaintiff in error.

Robinson, Jones and Matthias, JJ., concur. Wanamaher, Day and Allen, JJ., dissent.