Wanamaker, J.
(dissenting). The concrete question in this case is this: Shall a prior chattel mortgage on an automobile be permitted to postpone or defeat a mechanic’s lien for subsequent rebuilding and repairing said automobile, to the extent of the fair and reasonable value of the repair and materials therefor?
The right to a mechanic’s lien antedates all Constitutions and statutes. It is a common-law right established and recognized centuries ago and has become a settled law in this country, except where modified by a statute or Constitution. A new em *596 phasis was given this common-law right by a constitutional declaration made in 1912, as follows:
Article II, Section 33: “Laws may be passed to secure to mechanics, artisans, laborers, subcontractors and materialmen, their just dues by direct lien upon the property, upon which they have bestowed labor or for which they have furnished material. No other provision of the Constitution shall impair or limit this power.” (Adopted September 3, 1912.)
The state of Ohio has thus redeclared this primary and paramount doctrine in favor of the mechanic, the workman.
It is urged in the majority opinion that this constitutional doctrine contemplates only lien upon “real property.” I find no such limitation in the language of the Constitution. Upon the contrary, the language is “the property upon which they have bestowed labor or for which they have furnished material,” clearly comprehending both real property and personal property.
Indeed, it is a matter of common knowledge that the mechanic needs greater protection upon personal property than.he needs upon real property. Personal property by its very nature is not only more perishable but more transitory, and capable of avoiding payment for any service thereon by fleeing the jurisdiction.
What the sovereign people refused to write into their Constitution the Supreme Court is not permitted to write therein. True, no statute has been passed since that constitutional enactment declaring the doctrine, but the common-law doctrine per taining to mechanics’ liens so long as the mechanic *597 retained possession of the chattel is abundantly sufficient and need not be supplemented by a statute in order to safeguard the mechanic’s rights so long as he retains possession.
The courts below found that under the prior mortgage, which was regularly executed and kept in force, there was due the Metropolitan Securities Company the sum of $450. The courts, below found that J. J. McGuire, a mechanic, had furnished material and bestowed labor in rebuilding and repairing said automobile in the sum of $350, and that said sum was the fair and reasonable cost and value of said rebuilding and said repairs.
The record unquestionably shows that the owner and driver, Orlow, had so driven said automobile, that it collided with a bridge, disabling and dismantling said automobile so that it had to be taken to a garage or repair shop in the usual motor ambulance provided for such transportation.
Suggestion is made in the majority opinion that, after all, the repairs were small and comparatively valueless compared with the value of the original automobile. This contention is contradicted by the finding of the courts below that $350 was the fair and reasonable value of the labor and materials furnished.
Hence the suggestion that the record discloses less than $40 paid for new parts is quite unimportant, especially in view of the fact of such finding, and, secondly, because of the testimony in the record given by the mechanic, J. J. McGuire, to this effect.
Touching the condition of the car, McGuire testified :
*598 “The car is a big seven-passenger Willys-Knight car, and it was damaged in such a manner, the frames was bent back of .the motor, that it was necessary to remove the body, motor, everything, even the back axle housing was bent, so the car was stripped entirely, and the wiring, pipe, and everything else had to come off. That is what took so much labor to remove it and so much labor to reassemble it again.”
Touching the assembling of the car, McGuire testified :
“The assembling of the motor consisted of the refitting of the crank shaft, refitting of all the bearings, refitting rod bearings, cleaning up and the refitting of the piston rings and all other working parts of the motor, and putting same in first-class condition and testing it out. After the refitting was done the mounting up, putting the cylinder back upon the crank case and the exhaust manifold and the intake manifold, the carburetor and all the necessary connections on the motor, and the replacing of the motor back in the frame. The assembling of the car included the replacing of the body back upon the frame, and the fenders and the running boards and the splash pans on both sides and the mud pan and the front axle, the springs, the steering gear, the steering column, the vacuum tank, and all the piping and the wiring and the battery, and the placing of the transmission back in, and the grease cups we had out, the drive shaft, the rear springs and the rear axle housing, rear axlesi, and wheels.
“Q. How much was there left of that car when you got it down to where you could finally begin to build it up? A. Why, there wasn’t anything ex *599 cept the frame. We had to strip it right down to the chassis frame, had to take the body, side pans, and the fenders and the running boards and all of that.
‘ ‘ The Court: , Q. Asa mechanic do you say it was necessary to strip that down to that point? A. Absolutely. It was the only way to do the job.
“Q. How much experience have you had in repairing automobiles by that time? A. I have repaired a lot of them in that wrecked work.
“Q. For how many years? A. For two years.”
There is much more testimony to the same effect, but this is sufficient to demonstrate that the automobile after the collision was simply a shell, a piece of junk, as far as service or value was concerned.
The question of such priority is a new one in Ohio. Other states, however, have declared upon parallel, or at least analogous, cases. An interesting ease from Nebraska, Drummond Carriage Co. v. Mills, 54 Neb., 417, 74 N. W., 966, 40 L. R. A., 761, 69 Am. St. Rep., 719, is much in point. The pertinent part of 'the syllabus reads:
“A physician gave a mortgage on a buggy of which he retained possession and used it in his business. * * * The mortgagor, without the knowledge of the mortgagee, left the buggy with a carriage company for needed repairs. The company repaired the buggy and retained possession thereof to enforce a claimed lien for, or the payment of its reasonable charges for, such repairing. The mortgagee instituted an action of replevin against the carriage company to obtain possession of the buggy, asserting right thereto under and by virtue of his *600 mortgage lien. Held, that the mortgage lien was subordinate to the common-law lien, since the recitals of the mortgage and the facts and circumstances disclosed that the mortgagor had at least implied authority from the mortgagee to have the repairs made.”
In the opinion, at page 422 of 54 Neb., at page 968 of 74 N. W. (40 L. R. A., 761, 69 Am. St. Rep., 719), the origin and nature of the mechanic’s lien is aptly set forth as follows: •
“If property is delivered to a person to be by his skill and labor or by adding thereto property of his, enhanced in value, and he performs the labor or adds his own property to that delivered and thereby increases the value of the latter, he may retain possession of it until paid for his labor or materials. This is a doctrine of the common law, and the right is usually denominated a common-law lien, and it exists under a state of facts such as we have just detailed, unless there is a contract inconsistent with such lien, or some modifying circumstances which are in conflict with any such right, or disclose an intent not to claim the right.”
The following authorities are there cited:
“ ‘ A mechanic of any kind has a lien upon all personal property for manufacture or repairs, while it remains in his possession, * * * a carriage maker for repairs upon a carriage.’ (See 6 Wait, Actions & Defenses, 149, and cases cited.) Persons have by common law the right to detain goods on which they have bestowed labor, until the reasonable charges therefor are paid. (2 Kent, Commentaries, 635.) ”
*601 The opinion continues:
“In the absence of specific agreement, if a party has bestowed labor and skill on a chattel bailed to him for such purpose and thereby improved it, he has by general law a lien on it for the reasonable value of his labor or the right to retain it until paid for such skill and labor. Bevan v. Waters, 3 C. & P. [Eng.] 520; Scarfe v. Morgan, 4 M. & W. [Eng.] 270; Lord v. Jones, 24 Me., 439, 41 Am, Dec., 391; Grinnell v. Cook, 3 Hill [N. Y.] 491. This right rests on principles of natural equity and commercial necessity. (2 Kent, Commentaries, 634.) ”
This primary right recognized by the common law to retain possession of repaired or-rebuilt chattels that have value added to them by the mechanic through his-labor, skill and new material-added, to the extent of the fair and reasonable value,thereof, is in sound reason and good conscience prior to the right, not only of the owner of the automobile, but of all third parties.
It is suggested in the majority opinion that in the Nebraska case, supra, the court “was influenced by the facts and circumstances to hold that there was implied authority from the mortgagee to have the repairs made.” Now, this case is stronger than the Nebraska case, in that there is not only implied authority “to have the repairs made” but express authority. There is in the mortgage an obligation placed upon the owner to keep the automobile in repair.
That obligation imposed by the mortgagee upon the mortgagor carries with it the law applicable to such contract, to-wit, the law giving to any repairer, rebuilder or mechanic the right to the fair and rea *602 sonable value of his work and material in doing such repairing and rebuilding. As between the mortgagor and mortgagee, 'they might well contract as to who should pay, but that cannot in any wise affect the right of the mechanic to his pay before surrendering possession.
A Mississippi case is much in point, Broom & Son v. Dale & Sons, 109 Miss., 52, 67 South., 659, L. R. A., 1915D, 1146. The syllabus contains this language:
“Under Code 1906, Section 3075, which is merely declaratory of the common law, and which provides not only that a mechanic may retain, in his possession, any article which he repairs until the price of his labor and material furnished shall be paid, but also provides for the enforcement of the lien, where a mechanic repaired an automobile, the repairs being ordered by the person in possession who was apparently authorized to contract for same. Such mechanic has a lien for his labor which takes precedence over his rights of the vendor of the machine who sold it, reserving title to secure payment, but transferred the possession to the party ordering the repairs.”
The essential facts appearing in this language from the Supreme Court of Mississippi are exactly parallel to the essential facts here. It is urged, however, that the law of the Broom case has been overruled by the Supreme Court of Mississippi in a later case, to-wit, Hollis & Ray v. Isbell, 124 Miss., 799, 87 South., 273, 20 A. L. R., 244.
This conclusion is unwarranted from the language of the court itself in the latter case, which at page 807 of 124 Miss., at page 274 of 87 South. (20 A. *603 L. R., 244), approves the Broom case and distinguishes it from the later case, as follows:
“A ground of liability rests upon the proposition that the vendor had knowledge and impliedly consented to the repair of the car, and that the repair resulted to his benefit as well as to the benefit of the vendee. In the case before us the vendor had no knowledge whatever that repairs were being made or were to be made until after their completion. There is nothing in the record to show- that the repairs increased the value of the car over and above its value at the time of the sale.”
Again, the opinion in the Hollis & Bay case contends, at page 808 of 124 Miss., at page 274 of 87 South. (20 A. L. R., 244):
“In the present case it was agreed in the agreed statement of facts, above set out that the seller had no knowledge of the transaction between the mechanic and his vendee, but shows, on the contrary, that the mechanic had full knowledge of the seller’s right. This being true, he must have contracted upon the faith of the credit of the vendee and such right as the vendee had in the property repaired. There are no circumstances in this record sufficient to warrant us in applying the doctrine of Broom v. Dale, supra, to this case. There is a clear distinction between this case and that one.”
This all shows that the doctrine of the Broom case, where applicable, still controls in Mississippi.
This same doctrine is announced and applied in Watts, Trustee, v. Sweeney, 127 Ind., 116, at page 123, 26 N. E., 680, at page 682 (22 Am. St. Rep., 615), where it is said:
*604 “When the mortgagee intrusts machinery of the character in controversy to the custody of the mortgagor for a long period of time, to be used by the mortgagor in operating the railroad, it will be presumed against the mortgagee" that all necessary repairs were contemplated, and the mortgagor was, in case of needed repairs, constituted the agent of the mortgagee in procuring such repairs, and in such case equity gives the mechanic a lien for his services and materials. The repairs add to the value of the property, and they are for the benefit of the mortgagee as well as the mortgagor.”
The same doctrine was announced and applied in Hammond v. Danielson, 126 Mass., 294:
“A lien on personal property cannot indeed be created without authority of the owner. * * * But in the present case such an authority must be implied from the facts agreed. The subject of the mortgage is a hack, that is to say, a carriage let for hire; described in the mortgage as ‘now in use’ at certain stables; and which, as the parties have agreed in the case stated, the mortgagor retained possession of and used agreeably to the terms of the mortgage. It was the manifest intention of the parties that the hack should continue to be driven for hire, and should be kept in a proper state of repair for that purpose, not merely for the benefit of the mortgagee, but for that of the mortgagor also, by preserving the value of the security and affording a means of earning wherewithal to pay off the mortgage debt. The case is analogous to those in which courts of common law, as well as of admiralty, have held, upon general principles, independently of any provision of statute, that liens for repairs made *605 by mechanics upon vessels in their possession take precedence of prior mortgages.”
Now', it is suggested that this doctrine in the Massachusetts case, Hammond v. Danielson, 126 Mass., 294, supra, is contrary to the older Massachusetts case found in 106 Mass., 207 (Globe Works v. Wright), where the contrary doctrine was held. Clearly the later case should control, whether or not in conflict.
The mortgage here contains this language pertaining to the obligation of the mortgagor:
“Agrees to take the best care of the property and keep it in first-class condition and order at all times at the expense of the ‘purchaser.’ ”
The mere fact that that is to be done “at the expense of the purchaser” does not alter the authority to have the repairs made.
This same doctrine is announced in 3 Ruling Case Law, 134, Section 56, and cases cited. This doctrine has for a long time universally prevailed in the admiralty courts touching the lien of a mechanic upon a boat. The doctrine is stated in Jones on Chattel Mortgages. (5th Ed.), Section 474:
“A lien given upon property by force of law or statute, without any contract to create it, may in exceptional cases have precedence on an existing mortgage. Thus, the lien of a shipwright upon a boat in his possession, for repairs necessary for its preservation made upon it, may be enforced as against a prior mortgage duly filed or recorded.”
What difference there can possibly be between a transportation agency, such as a ship at sea, and an automobile, bus, truck, or the like on land, is difficult to distinguish.
*606 Something is made of the reference in the mortgage to a pleasure automobile in the majority opinion. Suppose it were a motor truck, what then1? The same principle must apply.
It would seem to be a primary principle that when the subject-matter is destroyed the lien which operates upon it is likewise destroyed. The courts below found, notwithstanding the judgment of the Court of Appeals was against the mechanic, that the fair and reasonable value of the time, labor, skill and materials furnished by the mechanic in rebuilding and repairing the automobile after the collision with the bridge was $350. The automobile subsequently sold for less than that amount. One conclusion is obvious, and that is the state of the automobile after the collision must have been such that its identity, utility, and value as an automobile had been entirely lost, and the record so clearly shows. It was junk. The very nature and necessities of the situation, to both mortgagor and mortgagee, would have compelled both of them, before either might have realized any substantial value out of that automobile, to have ordered the reasonable and necessary repairs involved in the rebuilding of the car.
The most that could be claimed in equity for the mortgage holder, and all liens are founded in equity, would be a first lien upon the fair value of the automobile as junked by the collision; and how in equity and justice can it be said that the mortgagee who had a lien upon the original car, which was destroyed, could transfer that lien to the rebuilt car and deprive the rebuilder of the fair and reasonable value of his time, labor, skill and materials neces *607 sary for such rebuilding? It sounds neither in reason, equity, or justice.
Another illustration, not uncommon, will apply. A person is the owner of a very valuable clock that had been a family heirloom. In straitened circumstances, he places a mortgage upon that clock in a substantial sum. While such mortgage is in force, the clock falls from its attachment upon the wall upon the floor and is broken in many pieces. One of the conditions of the mortgage is that the mortgagor shall keep the clock in good repair at his own expense. He takes it to a skilled clockmaker for the purpose of having such clock rebuilt and put in repair as a going concern. The clockmaker in the rebuilding discovers many of the pieces of the clock broken and replaces them; discovers many other parts bent and out of line and straightens them. He performs skilled labor and furnishes material for said clock and holds the clock for the fair and reasonable amount and value thereof. The mortgagee claims his lien upon the chattel is superior to that of the clock mechanic. Who shall prevail? Who shall have priority? The answer would seem self-evident, if laws shall serve justice rather than to have justice warped to some mere dictum of law.
The majority opinion refers to the case of Robinson, Jr., v. Fitch, 26 Ohio St., 659, purporting to hold that —
“The interest of a mortgagee under a chattel mortgage is that of a general owner of the property mortgaged,” etc.
This is a mere dictum in the syllabus and the opinion, and neither reason nor authority is given *608 foi* the holding. The language itself involves a contradiction. How the same person can. at the same time be both mortgagor and mortgagee of the same property involves a self-evident contradiction. lie is a lienholder, and to the extent of the lien he is an equitable owner, not the legal owner. The one in possession and custody of the automobile is the apparent owner. Lawful possession is prima facie evidence of ownership to the public. Orlow was in lawful possession of the car, not only authorized to repair but obligated to repair it when out of repair. The claim that the garage man, the mechanic, must keep a mortgage record of all the automobiles of the state which he is called upon to repair, or that he must make actual inquiry of the official records at his own cost and expense, or else repair at his peril, would work such a handicap of delay and expense upon the transportation agencies of this state that the impracticability of it would be obvious.
Lord Coke uttered and laid down an epigram that is the very essence of the law: “Reason is the life of the law; nay, the common law itself is nothing else but reason.”
Decisions may be found upon almost every side of every legal question. Very often, however, they are valueless because they are mere dictums, a mere “thus saith the court.”
The common-law lien of the mechanic is founded upon a basic reason, having its foundation in good conscience; in short, it is this: “The workman is worthy of his wage.” When that doctrine is applied to the building, rebuilding or repairing of a chattel by which new value is added to old chattel,, it is certainly good conscience that the man who *609 added the value shall have priority over the mere money lender, whose original machine has been destroyed in value and who authorized the man in possession thereof to keep the same in good repair.
The basic doctrine in all these cases, even the eases cited in the majority opinion, recognizes the old common-law doctrine of the mechanic who adds value to a chattel by his labor and material and uniformly preserves his prior right so long as he retains possession of the chattel. If that be true doctrine, how can it be said that there is any distinction between such common-law lien of a mechanic upon a vessel, upon a ship at sea, or upon a different transportation agency upon land? Why, in principle, should the mechanic who works upon the ship, who works on a machine of the sea, be more favored than the mechanic who works upon the machine of the land?
It is suggested that there is a distinction so far as public needs are concerned, and that therefore there is greater necessity for immediate repairs for the ship in order that it may pursue its journey upon the sea and be kept all the while seaworthy. This suggestion, however, overlooks the fact that the equity doctrine involved in the common-law lien of the mechanic is not founded upon any rights other than the mechanic’s rights.
Nineteen centuries ago it was written by a great lawyer and logician: “The laborer is worthy of his reward.” The doctrine in this case denies such reward to the workman, but makes him donate his labor and material to the chattel mortgage man.
Another rule of law should find wholesome recognition and application to this case. Where one of *610 two innocent parties must suffer a loss, it has uniformly been held that he who creates the condition causing such loss, or is a party thereto in the natural course of events, should be the one who should bear such loss.
When the chattel loan mortgagee permitted the mortgagor to possess and use the chattel, and not only authorized but imposed upon such mortgagor the duty of keeping the same in repair, how can it fairly be said that such chattel mortgagee was not, in the ordinary course of events, a party to that collision and the wrecking of the car, as against the conduct and rights of the mechanic who rebuilt and repaired it?
The Supreme Court of Ohio, now making its first declaration as to the rights and priorities of the wage worker who rebuilds broken-down chattels, furnishing new parts, adding new materials, resulting in new value, should make its first declaration in keeping with the spirit of the times, with Ohio’s new Constitution and with the old-time equity upon which mechanics’ liens were originally founded, and adapt it to our modern conditions of industrial life with its enlightened twentieth, century policy.
The doctrine of priority as applied to contending claims, where all cannot be satisfied, has been much misunderstood and necessarily therefore much misapplied.
It may be laid down as a legal truism that, where claims are equal in law and equity, in reason and good conscience, those prior in time are prior in right. Necessarily, however, this applies only to claims of the same class, the same nature, essentially alike or analogous in origin and kind. But upon *611 what principle can it be claimed, as to the claims of the money lender, who makes his loan at his own risk, basing his interest and commission charges, etc., upon his estimate of the hazard involved, permitting the chattel upon which he holds his lien to be possessed and used by others upon the much-traveled highways of the state, where there is constant danger of collision, that such a lien, under such circumstances, is of the same class as the mechanic’s or workman’s, who in the ordinary course of business is called upon to rebuild and repair such automobile when wrecked and entirely unfit and incapable of use?