WINGATE *v.* MISSISSIPPI SECURITIES CO.*

(Division B. Jan. 21, 1929.)

[120 So. 175. No. 27442.]

*Corpus Juris-Cyc References: Motor Vehicles, 42CJ, section 453, p. 823, n. 75: As to priority of lien for repairs or other services on personal property under contract with purchaser under conditional sale, see annotation in L. R. A. 1915D, 1141; 20 A. L. R. 249.

*G. Ed. Williams,* for appellant.

854

*Maynard, Fitzgerald & Venable* for appellee.

*G. Ed. Williams,* in reply for appellant.

ETHRIDGE, P. J. On the 21st day of September, 1921, the Automobile Sales Company, of Clarksdale, Miss., sold to a negro named Tom Marsaiels a secondhand Cadillac

automobile for the sum of five hundred seventy-four dollars, reserving title to the automobile until it was fully paid for, the payments to be made in installments. Thereafter the Automobile Sales Company sold the contract and notes to the Mississippi Valley Securities Company for five hundred dollars.

In the early part of January, 1926, the appellant, Wingate, was called on by Tom Marsaiels to come to Green Grove, about fifteen miles from. Clarksdale, to get the car and repair it; Wingate being engaged in the automobile repairing or service business. Wingate sent for the car, towed it into Clarksdale, it being unable to run by its own power, and there made repairs upon it, involving the following items: Mechanical labor twenty-five dollars, wiring and ignition of batteries, etc., fourteen dollars and fifty cents, timing chain, thirteen dollars and seventy-five cents, and also a battery, thirty-three dollars and fifty cents.

The car also needed casings to make it operate properly, to make it a going concern, and Wingate took up with the landlord of Tom Marsaiels, the purchaser, the question as to whether he would be safe in placing the casings on the car, and was advised against doing so; the landlord being of the opinion that the car was not valuable, and that making these necessary repairs would place too much money in the car. Thereafter Tom Marsaiels came into. Clarksdale, and a trade was made between him and Wingate, by which Wingate purchased the car, counting his repairs in the purchase price, and paying a small sum in addition thereto.

Thereafter Wingate placed casings upon the wheels to the value of one hundred five dollars, and operated the car in his business, using it largely for the purpose of towing in cars to be repaired.

At the time of making this purchase, Wingate had no notice of the outstanding contract or conditional sale, but

thereafter a demand was made upon him by the Mississippi Valley Securities Company for the possession of the car, which he refused to give up, and proceedings were taken legally to get possession of the car by the Mississippi Valley Securities Company. Wingate gave a forthcoming bond, and defended the action; and thereafter continued to use the car in its then condition in his business; and, at the time of the trial, the casings and improvements placed upon the car had largely deteriorated in value.

At the time Wingate took possession of the car, he testified, it was not worth more than about fifteen dollars. When the sheriff, under the process of the court, seized the car, in its then condition he valued it at five hundred dollars. At the time of the trial Wingate testified that the car was worth but little, being practically valued as junk.

Among other instructions, the court instructed the jury, for the plaintiff, that it was their duty to find from the evidence the value of the automobile at the time of the institution of the replevin suit, and any deterioration in value caused by defendant's use thereof. Also instructed the jury, for the defendant, that, in arriving at an assessment of damages for deterioration, the jury should consider the value of the car, as shown by the evidence in the case, at the time of the institution of the replevin suit, and, if its present value be equal to its value at the time of the institution of the suit, the jury would not be warranted in returning a verdict for any such damage.

The jury returned a verdict, under the instructions, valuing the car, at the time of replevin, at two hundred seventy-nine dollars and twenty-five cents, and found that the deterioration of the car between that time and the trial to be one hundred forty-two dollars and fifty cents. Judgment was entered upon this verdict, adjudging that the defendant should deliver to the plaintiff the car in

question, and that the plaintiff recover one hundred forty-two dollars and fifty cents and all costs.

The defendant contended that he was entitled to a mechanic's lien for the item of repairs made, as above stated, and that this lien was superior to the reserved title; and, also, that he was not liable for deterioration of the car in so far as it affected the casings, batteries, and other improvements placed upon it by him. Appellant conceded that he is not entitled to charge for towing the car in, under the decision of this court in *Orr* v. *Jackson Jitney Car Co.*, 115 Miss. 140, 75 So. 945. Appellant also conceded that he had no lien for the tires placed upon the car subsequent to his purchase from the vendee of the Automobile Sales Company, under the decision of the court in the case of *Hardy* v. *Watkins* (Miss.), 117 So. 255.

In *Broom* v. *Dale*, 109 Miss. 52, 67 So. 659, L. R. A. 1915D, 1146, this court held that, where a car was repaired with the knowledge of the seller reserving a lien on the car for the purchase money; that the mechanic's lien for repairs was superior to the claim for the purchase money, basing the decision upon the theory that it was necessary to keep the car in reasonable repair, so that it could operate and move in the ordinary way; and that the seller, in selling the car, impliedly authorized these repairs to be made.

In *Moorhead Motor Co.* v. *Walker Auto Co.*, 133 Miss. 63, 97 So. 486, this court held that, where the repairs were necessary to preserve the property and permit its ordinary operation, and to prevent deterioration, a seller impliedly authorized the buyer to make such repairs, and that the lien therefor, in such case, would be superior to the lien of the seller.

It is argued that this lien, which would have existed had not Wingate bought the car from Tom Marsaiels, was lost by that sale—was extinguished—and that Wingate had no lien for any repairs that he made thereupon

subsequent to his purchase to keep the car in operation, and to prevent deterioration.

It appears to be the theory that the lien was merged, in the title, and was thereby extinguished.

We do not agree with this view, but think that, when the lien existed, as it did, for making the original repairs, it was not lost by purchasing the car, in so far as it was against the original seller, and the reserved title is concerned.

In 40 C. J., p. 338, section 452, it is stated: "A conveyance of the property to the liencr does not necessarily merge the lien in the legal title, but the lien is of course satisfied and discharged by the conveyance where a part of the consideration therefor is the release of the indebtedness and the lien."

In note 36, under this text, it is said: "Applications of Rule.—Where the holder of a mechanic's lien acquires the title to the property upon which the mechanic's lien exists, by a conveyance thereof from the owner, the mechanic's lien will not be so merged in the legal title, or be so extinguished, that a judgment subsequently rendered in favor of a third person against such owner, but rendered at a term of the court commenced before the conveyance was made, and in an action pending at the beginning of the term, will create a lien prior to the mechanic's lien. *Bowling* v. *Garrett*, 49 Kan. 504, 31 P. 135, 33 Am. St. Rep. 377. (2) The fact that, during the progress of their work, contractors claiming mechanics' liens purchased an undivided half interest in the property will not extinguish their lien, where it appears that the owner had become insolvent, and unable to pay such contractors, that the deed was taken in order to procure a loan on the property and complete the work, that the contracts were not surrendered or canceled, and that there was no express agreement for discharge of the

liens. *Blatchford* v. *Blanchard,* 160 Ill. 115, 43 N. E. 794.''

We therefore think that the defendant Wingate was not deprived of his lien against the vendor's note on the car, but that he will be permitted to use this account and lien in the suit.

We are also of the opinion, under the facts in the record, that the plaintiff in replevin was not entitled to recover the whole depreciation of the car between the time of seizure thereof and the trial. The items that were placed on the car after its purchase by the defendant, Wingate, at his own expense, should not be counted in the estimation of depreciation. The depreciation should be for the plaintiff's interest in the car as it was valued at the time of the seizure, based upon the car as it stood, without counting the casings and separable parts of the car, put on by defendant, in arriving at such depreciation. The plaintiff's right in such case is to be made whole, and to have such judgment as his rights were worth at the time of the seizure.

We therefore think it was error for the court to render the judgment which was rendered in this cause, that the cause was tried on a misconception of the rights of the parties, and the judgment will be reversed, and the cause remanded for a trial in accordance with these views.

*Reversed and remanded.*